THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL COOPER, Defendant-Appellant.

Fifth District No. 5—91—0729

Opinion filed December 30, 1992.

Daniel M. Kirwan and Lawrence J. O'Neill, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Paula Phillips, State's Attorney, of Effingham (Norbert J. Goetten, Stephen E. Norris, and Diane L. Campbell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

Defendant, Daniel Cooper, was charged by information filed January 17, 1991, in the circuit court of Effingham County with the offenses of: (count I) cannabis trafficking in that he knowingly caused to be brought into the State for the purpose of delivery, and arranged for the purchase of, more than 2,500 grams of cannabis, knowing that the cannabis would be brought from the State of Texas to be delivered to him; (count II) unlawful possession with intent to deliver cannabis in that he knowingly and unlawfully possessed with intent to deliver more than 500 grams of a substance containing cannabis; (count III) unlawful possession of cannabis in that he knowingly and unlawfully had in his possession more than 500 grams of a substance containing cannabis; (count IV) unlawful possession of cannabis without cannabis tax stamp in that, being a dealer in cannabis, he knowingly and unlawfully possessed cannabis without paying the appropriate tax and without affixing the official tax stamp to that cannabis; (count V) conspiracy to commit cannabis trafficking; and (count VI) armed violence in that, while armed with a dangerous weapon, a pistol, he knowingly possessed with the intent to deliver more than 500 grams of cannabis. All of the offenses were alleged to have occurred on January 16, 1991.

Following a jury trial in the circuit court of Effingham County, held June 3-5, 1991, defendant was found guilty of counts II through VI. Defendant was found not guilty of count I, cannabis trafficking. Judgment was entered on the guilty verdicts on July 12, 1991, and defendant was sentenced as follows: (count II) seven years' imprisonment; (count III) no judgment entered; (count IV) three years' imprisonment; (count V) three years' imprisonment; and (count VI) 10 years' imprisonment. The terms of imprisonment on counts II, IV and V were to run concurrently with each other but consecutively to the term of imprisonment on count VI. Defendant was further ordered to pay a fine and court costs. Defendant was given credit for 64 days spent in custody as a result of the offenses on which he was sentenced.

Defendant appeals his convictions and sentences, raising the following issues: (1) whether the trial court committed reversible error in refusing defendant's tendered instruction on the defense of entrapment; (2) whether the defendant's conviction for unlawful possession with intent to deliver cannabis must be vacated because it is based on the same physical act of possession that underlies defendant's conviction for armed violence; (3) whether the defendant's conviction for

conspiracy (cannabis trafficking) must be vacated because Wharton's Rule precludes prosecution for conspiracy to commit an offense when the underlying substantive offense requires more than one actor for its commission; (4) whether the defendant's conviction for unlawful possession of cannabis must be vacated as it constitutes an incomplete judgment; (5) whether the trial court erred in imposing a consecutive sentence since the offenses of which defendant was convicted were part of a single course of conduct during which there was no substantial change in the nature of the defendant's criminal objective and there was no sufficient showing that a consecutive sentence was required to protect the public from further criminal conduct by defendant; (6) whether the defendant's sentence is excessive because it is disparate to the sentence of the codefendant, the defendant had no prior criminal record and the trial court considered an improper factor in sentencing; and (7) whether the defendant is entitled to credit toward his fine for the 64 days he spent in custody prior to sentencing.

The following evidence was adduced at defendant's jury trial. Illinois State Police officer Brad Voyles testified that he was on routine patrol on January 15, 1991, when he stopped and searched a vehicle occupied by Julian Arevalo, Donald Langston and Daniel Gaudette. He discovered in the vehicle approximately 48 pounds of cannabis.

Shortly thereafter, Voyles worked a surveillance detail near a Best Inns of America in Effingham watching for a silver GMC van with an Ohio license plate. At approximately 2 a.m. on the morning of January 16, 1991, Voyles observed this vehicle pull into the parking lot of the Best Inns of America, circle the motel once and drive away. At approximately 12:30 the next afternoon, Voyles observed the vehicle again enter the parking lot of the Best Inns and park in front of the motel. The driver of the vehicle exited the vehicle, went upstairs in the motel, then returned and moved the vehicle to the back of the motel. The driver again exited the vehicle and went upstairs to a motel room. It was approximately 12:45 p.m. The driver of the vehicle was the defendant.

Forty-five minutes later Voyles observed the defendant exit the motel and come down the stairs at the back of the building. At that time, defendant was arrested. At the time of his arrest, defendant was carrying a steel Colt .45 caliber weapon in his left coat pocket. The gun was loaded and cocked. Defendant was also carrying a small bag.

On cross-examination, Voyles testified that he arrested all three of the occupants of the vehicle he stopped, which was carrying 48

pounds of cannabis. Defendant was not one of these three men. Eleven packages of the cannabis seized from the vehicle were given to Investigator Geurin of the State Police Division of Criminal Investigation. These 11 packages weighed approximately 10 pounds. Investigator Geurin told Voyles what vehicle to watch for in the surveillance detail. Voyles never saw defendant brandishing the weapon he was carrying when arrested.

Mark Paiva was called to testify for the State. He is employed by the Illinois State Police crime laboratory as a forensic scientist in the chemistry section. He specializes in identifying and analyzing controlled substances and cannabis. After having been qualified as an expert witness in the analysis and identification of controlled substances and cannabis, Paiva testified that he analyzed a substance found in bags which were inside a suitcase and identified the substance as over 500 grams of cannabis. The gross weight of the all the bags containing cannabis was 5,400 grams. Paiva eventually delivered the suitcase and its contents to Sergeant Steve Poe.

Michael C. Geurin with the Illinois State Police, Division of Criminal Investigation, testified that he is assigned to the undercover narcotics squad. He also serves as evidence custodian at the State Police zone headquarters in Effingham. As such, he is responsible for logging in and out of the vault all evidence and for maintaining a record of chain of custody of all evidence. There are two other evidence custodians.

Geurin participated in the investigation and arrest of defendant. Geurin became involved in that investigation on January 15, 1991, when three individuals were arrested for transporting cannabis in their car. Those individuals were Daniel Gaudette, Donald Langston and Julian Arevalo. Geurin made arrangements with Gaudette to try to persuade defendant to come to Effingham County. The surveillance unit was set up. Geurin also set up a monitoring unit in a room adjoining room 228 of the Best Inns in Effingham. Room 228 was monitored electronically through a closed circuit television which also videotaped the activity in room 228. After observing the transaction which occurred in room 228, Geurin directed the surveillance officers to arrest defendant when he exited the motel. As defendant was arrested, Geurin entered room 228 and received $5,000 from Daniel Gaudette. Recovered from defendant upon his arrest was $534 in cash.

Geurin identified a cassette tape recording of telephone conversations which occurred on January 16, 1991. He also identified the gun which was taken from defendant upon his arrest. Geurin also identi-

fied the suitcase which Paiva had previously testified contained 5,400 grams of cannabis.

On cross-examination, Geurin testified that Donald Langston and Daniel Gaudette, two of the individuals who were arrested by Trooper Voyles, also participated in the investigation of defendant. Geurin first met with Langston and Gaudette at State Police headquarters in Effingham on January 15, 1991. Gaudette agreed to contact defendant at Geurin's suggestion. Geurin told Gaudette only that, if the investigation was successful, Geurin would make the State's Attorney aware of the help which Gaudette had provided. Geurin made no other promises to Gaudette, and Gaudette was, in fact, under arrest. Geurin was present when Gaudette contacted defendant by telephone on the afternoon of January 15, 1991. The initial conversation and two others between Gaudette and defendant were not recorded, and Geurin could not hear defendant's side of the conversation. All of the nonrecorded conversations were initiated by Gaudette. Additional telephone conversations between Gaudette and defendant occurred on the evening of January 15, 1991. These conversations were recorded.

In one of the first three unrecorded conversations, Gaudette asked defendant to come to Illinois because Gaudette's vehicle had broken down, Gaudette had the packages defendant was waiting for and if defendant wanted them he would have to come get them. Gaudette and defendant negotiated a reduction in the price for the packages if defendant had to drive to Illinois to get them. The packages contained marijuana. Gaudette and defendant settled on a price for the marijuana of $1,100 per pound, plus Gaudette needed money for vehicle repairs. The total came to a little over $5,500. Geurin testified that the initial telephone conversations were not recorded because he did not have time to obtain a court order authorizing the eavesdrop.

At the time of the transaction in room 228 of the Best Inns, Geurin was in the adjoining room with three other State Police officers. The transaction was surreptitiously video- and audio-recorded. During the transaction, defendant gave Gaudette $5,000. There was some discussion of defendant's gun during the transaction, but the gun was not brandished.

The State's next witness was Frederick Bray, an agent with the Illinois State Police, Division of Criminal Investigation. He participated in the surveillance and arrest of defendant. On the evening of January 15, 1991, he positioned himself near an exit ramp from the interstate highway where he could watch for defendant's vehicle to exit the highway. At approximately 2:15 on the morning of January

16, he observed the vehicle. It stopped on the shoulder of the exit ramp and the dome light inside the vehicle came on. There appeared to be a white male driving the van. Bray observed no passengers. The van proceeded off the interstate and Bray lost sight of it. Bray observed the vehicle late in the morning at the Days Inn in Effingham. Eventually, defendant came out of the Days Inn, loaded some suitcases into the van and left the parking lot. The van was followed to the Best Inns in Effingham where defendant was arrested. Taken from defendant's person at the time of his arrest was a .45 caliber automatic pistol. The hammer was locked back in a cocked position. Also taken from defendant's person was $534 in cash. Also taken from defendant at the time of his arrest was the suitcase which Paiva had testified contained 5,400 grams of cannabis.

Steven L. Poe, an agent with the Illinois State Police, Division of Criminal Investigation, testified that he interviewed defendant at approximately 3:20 p.m. on January 16, 1991. The interview took place at the police headquarters in Effingham, and Agent Bray was also present. Defendant was under arrest at the time and was advised of his *"Miranda* rights." Defendant indicated he understood his rights and agreed to talk to the police. Defendant stated that he was involved in selling marijuana so that he could supplement his income and live the good life. He was unemployed. Poe obtained a brief personal history of defendant.

On cross-examination, Poe testified that defendant also told him that one of the reasons he had done this was because marijuana might be less expensive coming out of Texas. Poe had advised defendant that a conviction for armed violence carried a mandatory minimum prison sentence of six years and up to 30 years.

Jerry Taylor of the Illinois State Police testified that he is assigned to the technical investigation section, which uses electronic audio or video equipment to maintain and record evidence in criminal cases. He met with Agent Geurin on January 15, 1991, at the Best Inns of America in Effingham, where he set up electronic audio and video surveillance of a room there. He waited in the adjoining room until the next day when a video and audio recording was made of a transaction in the monitored room.

At this point in the proceedings, the video recording of the transaction in the room was played for the jury. We note that the videotape is not included in the record on appeal.

Mark Paiva was recalled to testify for the State. He had weighed the cannabis which was contained in the suitcase taken from defend-

ant and testified that there was in excess of 2,500 grams, an element of the offense of cannabis trafficking.

The State's final witness was Daniel Gaudette. He testified that he first met defendant a year before trial in Columbus, Ohio. Gaudette was living in Austin, Texas, at the time, where he continued to reside at the time of trial. Five months after meeting defendant, Gaudette contacted him in Columbus and had a telephone conversation with him. They discussed whether defendant was going to go to Austin to purchase cannabis. Defendant indicated that he would be down there soon.

On January 12, 1991, Gaudette again contacted defendant and they had a telephone conversation. They discussed whether Gaudette would be going to Columbus to deliver cannabis to defendant. They agreed that Gaudette would travel to Columbus to deliver the cannabis. Gaudette hoped to make some money. Defendant had indicated he was interested in the cannabis. They made arrangements for Gaudette to contact defendant by pager when Gaudette got into Columbus. Gaudette was given a code number to enter into the pager to identify himself. Gaudette was also told to enter "911" in the pager if he had an emergency.

After weighing the cannabis, Gaudette left the State of Texas headed to Columbus, Ohio, with Julian Arevalo and Donald Langston. Gaudette left Texas on January 14, 1991, and was arrested in Illinois on January 15, 1991. Once taken to the Division of Criminal Investigation headquarters, Gaudette attempted to contact defendant to ask him to come to Effingham to pick up the cannabis. Gaudette placed two calls to defendant and left messages on defendant's pager. On the second message, Gaudette left the code "911" to indicate an emergency. These two calls were placed only 30 seconds apart. Defendant returned Gaudette's calls. Gaudette told defendant that he was having car problems and was going to check into a motel. Gaudette asked defendant to come to Effingham and meet him. Defendant responded that he would call Gaudette back, which he did. Defendant told Gaudette that he was leaving. Gaudette was to check into a motel and then call defendant back and let him know where he was staying. Defendant never argued with Gaudette about coming to Effingham and did not seem reluctant to do so. Gaudette and defendant did renegotiate the price of the cannabis since defendant was going to have to drive to get it. They agreed on a price of $1,200 per pound. Gaudette proceeded to a motel room, called to let defendant know where he was staying, and waited for defendant with Donald Langston and the police officers.

When Gaudette left Texas, he had 48 pounds of cannabis with him. Defendant had agreed to purchase it in 10-pound lots. When 10 pounds sold, defendant would purchase an additional 10 pounds until all the cannabis was sold. Gaudette had intended to remain in Columbus while defendant sold the cannabis. In the motel room in Effingham, defendant asked Gaudette to "front" him some cannabis, that is, to sell him five pounds and give him an additional five pounds and trust him for the money. Gaudette agreed to front defendant the five pounds of cannabis. They agreed on a price of $5,500. Defendant gave Gaudette $5,000 and told him he would give him the additional $500 when Gaudette got to Columbus.

Upon his arrest, Gaudette was told by the police that if he cooperated with them, they would tell the State's Attorney and it might help him a little bit. Gaudette ultimately pleaded guilty to felony unlawful possession of cannabis with intent to deliver and was placed on probation.

On cross-examination, Gaudette testified that it was his idea rather than defendant's to bring the cannabis from Texas to Ohio. Defendant did not ask Gaudette to come to Ohio. They had not agreed on the quantity or price of cannabis defendant was going to buy. Once in Effingham, Gaudette told defendant that he needed money for car repairs. They did not negotiate for the sale of marijuana until defendant was in the motel room in Effingham.

On redirect examination, Gaudette explained that he had first met defendant when he went to Columbus to bail out a friend who was in jail for selling marijuana to a friend of defendant's. Defendant loaned Gaudette money for the bail. Defendant knew why Gaudette was driving to Columbus and they had agreed that defendant would buy Gaudette's marijuana. Defendant indicated that he would probably have enough cash to buy 10 pounds at $1,400 per pound. Defendant knew that Gaudette was on his way to Columbus. When Gaudette left the State of Texas, defendant knew that he was headed to Ohio with cannabis and defendant had agreed to buy all the cannabis that Gaudette had.

Following Gaudette's testimony, the State rested. The defendant waived opening statement and called its only witness, the defendant.

Daniel P. Cooper testified that he is 26 years old and resides in Columbus, Ohio, with his wife and six-year-old son. Defendant is acquainted with Daniel Gaudette. Defendant recalled conversations he had with Gaudette on January 15, 1991. Defendant did not initiate these conversations but only responded to Gaudette's messages. At approximately 4 p.m. on that date, he received a message from

Gaudette which he ignored. Gaudette then left a second message indicating he had an emergency. Defendant returned Gaudette's call. Gaudette told defendant that his car had broken down, and that he had pot in the car and was scared because it was sitting on the highway, but he needed money to have it repaired. Defendant told Gaudette that he could not come to Effingham to help him because he and his wife were fighting. Gaudette asked defendant to talk with his wife and call him back. Defendant did not call him back. After 45 minutes to one hour, Gaudette again paged defendant. Up to this point, they had not discussed the sale or purchase of marijuana. Gaudette had just asked defendant to bring him money for car repairs. When defendant and Gaudette spoke a second time, Gaudette indicated that he was having the car towed, but that he still needed money for repairs. Defendant had never asked Gaudette to bring him marijuana. He did want Gaudette to bring him some money that he owed him. In this second conversation, defendant did not agree to come to Effingham. Gaudette called defendant back a third time. Again, marijuana was never discussed. Three or four hours later, defendant decided to come to Effingham to help Gaudette. Defendant and Gaudette talked a fourth time and defendant told Gaudette that he would help him. Later, defendant called Gaudette and told him that there were going to be a lot of miles put on his van. Defendant never asked Gaudette to bring him marijuana. Gaudette had been calling defendant for months asking defendant to go to Texas to buy pot. Defendant was not interested. Gaudette wanted to pay back the money he owed defendant in marijuana rather than cash. Defendant never arranged for Gaudette to bring marijuana to Ohio. Defendant and Gaudette did not negotiate for the sale of the marijuana other than in the motel room in Effingham.

On cross-examination, defendant testified that he was unemployed on January 15, 1991, and had been unemployed since August or September 1990. Defendant had been self-employed in a dating service which he referred to on the videotape as a "whore service." Although unemployed, defendant did not consider himself to be "down and out" in January 1991. Defendant became unemployed because he ran his business out of his apartment, from which he was evicted in August or September 1990. He found a new home in October or November 1990 and reconnected his business phone. Defendant denied that his business offered prostitution and testified that he only referred to it as a whore service to impress his friends. Defendant testified that he had simply been bragging when he told Gaudette on the videotape that he sold marijuana in Columbus and that he was growing a whole

roomful of it. When defendant first entered Gaudette's motel room in Effingham, the first thing he said was, "Let's see the shit." Defendant explained that he said this because he knew Gaudette had had pot in the car and when he walked in the room, there was a bag of it sitting on the bed. Defendant did not purchase the cannabis from Gaudette. He loaned Gaudette $5,000 and Gaudette was going to take the cannabis and sell it to someone else in Columbus. Defendant denied that he put cannabis in his suitcase and indicated that Gaudette and Langston put it in his suitcase.

On redirect examination, defendant explained that the name of his business is "Classic Modeling International" and it is an escort service. It is a legal business in the State of Ohio. Defendant explained that he did not actually purchase the cannabis from Gaudette in Effingham. Defendant understood that he was loaning Gaudette money and that Gaudette was going to buy the pot back at a higher price. Defendant admitted that he gave Gaudette money and left the motel room with pot. Defendant admitted that what appeared on the videotape actually occurred as taped.

Steven L. Poe, who had testified earlier, was called by the State in rebuttal. He testified that he was present when Gaudette telephoned defendant from police headquarters on January 15, 1991. Poe heard Gaudette tell someone, presumably defendant, on the telephone that his car had broken down in Effingham, that Gaudette was having the car towed and was getting a room at the Best Inns of America, that he had the stuff but he did not have enough money to get his car repaired, and would defendant come to Effingham to pick up at least a portion of it to help him out. He heard Gaudette say into the phone, "You can have five for fifty-five hundred."

On cross-examination, Poe testified that he did not hear Gaudette use the words "marijuana," "pot," or "shit." This concluded the evidence in the case. After hearing closing argument, the jury returned with a verdict of not guilty as to count I, cannabis trafficking, and guilty as to the remaining five counts.

Defendant's first argument on appeal is that the trial court erred in denying his tendered instruction on the defense of entrapment. Defendant did tender the appropriate jury instruction relating to the defense of entrapment. (Illinois Pattern Jury Instructions, Criminal, No. 24—25.04 (3d ed. 1992).) The State objected for the reason that the defense is not available unless the defendant admits commission of the offense. Defendant argued that, although he did not admit commission of the offenses of cannabis trafficking and conspiracy to commit cannabis trafficking, and therefore admittedly the defense would

not be available as to those offenses, he had admitted his guilt of the other offenses when he testified that what appeared on the videotape had actually occurred. The tape clearly showed defendant taking possession of the cannabis and that he was armed with a gun. Defendant argued that, if the court considered defendant's testimony that the videotape was accurate to be an admission of guilt, he was entitled to the entrapment defense instruction. The State responded that, although defendant did admit that the videotape was accurate, at trial he denied having committed any of the offenses, particularly any intent to deliver the cannabis. The court found that the record did not support defendant's argument that he had admitted his guilt but instead demonstrated that he had steadfastly maintained his innocence. Because defendant had not made an unequivocal admission of guilt, the court refused defendant's tendered entrapment defense instruction.

The trial court is correct that a precondition to raising the entrapment defense is that the defendant must admit that a crime was committed and that he committed it. (*People v. Gillespie* (1990), 136 Ill. 2d 496, 501, 557 N.E.2d 894, 896.) As explained in *Gillespie*, the logical reasoning behind this long-standing rule is that it is both factually and legally inconsistent for a defendant to deny committing the offense and then to assert as a defense that he committed the offense, but only because of incitement or inducement by the authorities. (*Gillespie*, 136 Ill. 2d at 501, 557 N.E.2d at 897.) Failure to admit commission of the crime precludes a defendant from claiming that the jury should have been instructed regarding entrapment. (*People v. Arriaga* (1981), 92 Ill. App. 3d 951, 954, 416 N.E.2d 418, 421.) A defendant is precluded from relying on entrapment as a defense if he denies any of the facts constituting the offense charged, including the requisite mental state, or asserts he did not commit the offense. (*Arriaga*, 92 Ill. App. 3d at 955, 416 N.E.2d at 421.) We point out that our supreme court has made clear in *Gillespie* that this remains the law in the State of Illinois despite decisions from other jurisdictions to the contrary. See, *e.g., Mathews v. United States* (1988), 485 U.S. 58, 99 L. Ed. 2d 54, 108 S. Ct. 883.

Of course, this does not mean that a defendant who wishes to rely on the entrapment defense cannot plead not guilty and force the State to its proof on all the elements of the offense. We think it does mean, however, that a defendant may not choose alternative and inconsistent defenses, that is, claim at the same time that he did not commit the offense, but that if he did, he was entrapped. The question before us, as we see it, is what constitutes a sufficient admission

of commission of the offense to allow reliance upon the entrapment defense.

The trial court found that, because defendant did not "unequivocally" admit his guilt of the crimes, he was not entitled to an entrapment instruction. Indeed, the trial court indicated to defendant that if he wished the jury to be instructed on the defense of entrapment, he would have to retake the witness stand and testify under oath that he was guilty of all the elements of the offense. We do not think this is required.

The defendant's theory of defense, as demonstrated by his testimony, was that he came to Effingham with no intention of purchasing or receiving marijuana from Gaudette. He came to Effingham only to deliver money to Gaudette so that Gaudette could have his car repaired and complete his journey to Columbus. No discussion of the purchase of marijuana ever occurred between defendant and Gaudette until they met in the motel room in Effingham. At that point, defendant agreed to take possession of the marijuana only as security for the loan of money to Gaudette. He did not purchase the marijuana from Gaudette and did not intend to sell the cannabis once he got back to Columbus. Defendant intended only to keep possession of the cannabis until Gaudette arrived in Columbus, when Gaudette would repay the loan plus interest and retake possession of the cannabis. Defendant admitted that he did take possession of the cannabis and that he was armed with a gun while in the motel room. He also admitted that he intended to "resell" the cannabis to Gaudette when Gaudette arrived in Columbus. However, defendant had no prior disposition or intention to engage in any transaction relating to cannabis prior to arriving in the Effingham motel room. He was induced to enter into the "loan transaction" by an agent of the State, Gaudette, for the purpose of obtaining evidence for his prosecution.

■■ We think this constitutes sufficient admission of commission of the elements of the offense to warrant the giving of an entrapment instruction. While defendant did not unequivocally admit commission of the offenses, neither did he unequivocally deny commission of the offenses. Instead, defendant presented an explanation as to how and why he took possession of the cannabis which, although inconsistent with the State's theory of the case, was consistent with defendant's theory that he was not predisposed to commit the offenses but was induced by law enforcement agents to commit the offenses. In an entrapment defense, the accused admits the commission of the offense while denying that he was inclined to commit the offense before the intervention of the law enforcement agent. In determining whether

an entrapment instruction is warranted, the defendant's testimony must be viewed in the light most favorable to the defendant. (*People v. Carpentier* (1974), 20 Ill. App. 3d 1024, 1027, 314 N.E.2d 647, 649.) Furthermore, only slight evidence of entrapment is required to justify the giving of the instruction (*Carpentier*, 20 Ill. App. 3d at 1026, 314 N.E.2d at 649), and we need only determine whether defendant presented evidence, which, if believed, establishes the elements of the entrapment defense. (*People v. Gresham* (1981), 96 Ill. App. 3d 581, 584, 421 N.E.2d 1053, 1056.) Defendant did that here, and we think the trial court erred in finding that defendant did not sufficiently admit commission of the crimes to justify the giving of the tendered entrapment defense instruction.

However, we also find that, under the facts of this case, the error was harmless. Any error in giving or refusing instructions will not justify a reversal when the evidence in support of the conviction is so clear and convincing that the jury's verdict would not have been any different. (*People v. Austin* (1989), 133 Ill. 2d 118, 124, 549 N.E.2d 331, 333.) Without repeating the evidence we have already set forth, suffice it to say that the evidence of defendant's guilt was overwhelming. Defendant's testimony at trial, and his theory of defense, was incredible. The evidence is overwhelming that defendant was not entrapped in that the law enforcement agency merely afforded defendant the opportunity or facility for committing an offense in furtherance of a criminal purpose which he had originated. (See Ill. Rev. Stat. 1989, ch. 38, par. 7—12.) The evidence of defendant's predisposition to commit the crimes was overwhelming. Thus, although we find error in the trial court's refusal of defendant's tendered instruction on the defense of entrapment, we also find that that error was harmless and does not require reversal of defendant's convictions.

Defendant's second argument on appeal is that his conviction for unlawful possession with intent to deliver cannabis must be vacated because it is based on the same physical act of possession which underlies defendant's conviction for armed violence. The State agrees and so do we.

■ In enacting the armed violence statute, the legislature intended only to increase or enhance the minimum penalty upon conviction of a felony when the violator was in possession of a dangerous weapon while committing the felony. The legislature did not intend to provide for the imposition of multiple convictions and sentences based on a single act. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 168, 435 N.E.2d 477, 478.) Thus, multiple convictions for both armed violence and the underlying felony cannot stand where a single physical act is

the basis for both charges. (*Donaldson*, 91 Ill. 2d at 170, 435 N.E.2d at 479; *People v. Payne* (1983), 98 Ill. 2d 45, 456 N.E.2d 44.) Here, there was only one act of unlawful possession of cannabis with intent to deliver, and it is the act upon which the armed violence charge is based. Accordingly, we vacate defendant's conviction and sentence for the offense of unlawful possession of cannabis with intent to deliver.

Defendant's third argument on appeal is that his conviction for conspiracy (cannabis trafficking) must be vacated because Wharton's Rule precludes prosecution for conspiracy to commit an offense when the underlying substantive offense requires more than one actor for its commission. Defendant was charged pursuant to section 8—2 of the Criminal Code of 1961 with conspiracy to commit cannabis trafficking in that, "with intent that an offense [cannabis trafficking] be committed, he agree[d] with another to the commission of that offense." (Ill. Rev. Stat. 1989, ch. 38, par. 8—2(a).) Cannabis trafficking is committed when a person "knowingly brings or causes to be brought into this State for the purpose of manufacture or delivery or with the intent to manufacture or deliver 2,500 grams or more of cannabis in this State or any other state or country." (Ill. Rev. Stat. 1989, ch. 56½, par. 705.1.) Defendant argues on appeal that his conviction for conspiracy to commit cannabis trafficking cannot stand because the underlying offense, cannabis trafficking, by its very nature requires more than one actor for its commission.

■ We find that Wharton's Rule does not preclude defendant's prosecution for conspiracy to commit cannabis trafficking for two reasons: Wharton's Rule does not apply to the instant charge because the underlying offense of the conspiracy charge, cannabis trafficking, does not necessarily require the concerted action or agreement of two or more persons but may be committed by a single individual acting alone, and in any event, Wharton's Rule has been abolished in Illinois.

Wharton's Rule, as originally stated, provides:

> " 'When to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime of such a character that it is aggravated by a plurality of agents, cannot be maintained.' " (*Iannelli v. United States* (1975), 420 U.S. 770, 773, 43 L. Ed. 2d 616, 620, 95 S. Ct. 1284, 1288, quoting 2 F. Wharton, Criminal Law §1604, at 1862 (12th ed. 1932).)

More simply stated, the rule provides: " 'An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission.' " *Iannelli*, 420 U.S.

at 773 n.5, 43 L. Ed. 2d at 621 n.5, 95 S. Ct. at 1288 n.5, quoting 1 R. Anderson, Wharton's Criminal Law & Procedure §89, at 191 (1957).

In *Iannelli*, the Supreme Court pointed out that Wharton's Rule has vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary. (420 U.S. at 782, 43 L. Ed. 2d at 625, 95 S. Ct. at 1292.) As the rule is essentially an aid to the determination of legislative intent, it must defer to a discernible legislative judgment. 420 U.S. at 786, 43 L. Ed. 2d at 628, 95 S. Ct. at 1294.

Finally, the Supreme Court held:

"Wharton's Rule applies only to offenses that *require* concerted criminal *** agents. In such cases, a closer relationship exists between the conspiracy and the substantive offense because *both* require collective criminal activity. The substantive offense therefore presents some of the same threats that the law of conspiracy normally is thought to guard against, and it cannot automatically be assumed that the Legislature intended the conspiracy and the substantive offense to remain as discrete crimes upon consummation of the latter." (Emphasis in original.) *Iannelli*, 420 U.S. at 785, 43 L. Ed. 2d at 627, 95 S. Ct. at 1293.

Wharton's Rule was first recognized in Illinois in *People v. Purcell* (1940), 304 Ill. App. 215, 26 N.E.2d 153, which held that an indictment charging conspiracy to commit illegal gaming at cards did not charge a crime in that neither of the defendants could have committed the substantive offense alone without the concerted action of the other. Wharton's Rule precluded the indictment. *Purcell* pointed out that the rule does not apply where the substantive offense can be committed by a single individual. (304 Ill. App. at 218, 26 N.E.2d at 154.) *Purcell* also recognized that the rule is most often applied to such offenses as bigamy, bribery, adultery, fornication, dueling, incest and similar offenses. (304 Ill. App. at 218, 26 N.E.2d at 154.) The court emphasized that the rule applies only where the substantive offense necessarily involves an unlawful agreement between two or more persons. Where the substantive offense does not necessarily require the agreement of two people but may be committed by a single individual acting alone, the rule does not bar prosecution. In order for the rule to apply, it must be impossible under any circumstances to commit the substantive offense without cooperative action or agreement. 304 Ill. App. at 219, 26 N.E.2d at 155.

We find that Wharton's Rule does not apply in the instant case because the underlying, substantive offense, cannabis trafficking, does not necessarily require the agreement of two people for its commission but may be committed by a single individual acting alone. Obviously, a person acting alone may commit cannabis trafficking by knowingly bringing into this State for the purpose of manufacture or delivery, or with the intent to manufacture or deliver, 2,500 grams or more of cannabis in this State or any other State or country. (See Ill. Rev. Stat. 1989, ch. 56½, par. 705.1.) Thus, it is not impossible to commit the substantive offense of cannabis trafficking without cooperative action or agreement, and Wharton's Rule does not apply.

There is yet another reason why Wharton's Rule does not apply in the instant case: the rule has been abolished in Illinois. In *People v. Laws* (1991), 224 Ill. App. 3d 167, 170, 586 N.E.2d 453, 455, the court pointed out that the committee comments to the conspiracy statute indicate that, in enacting the statute, the legislature intended to eliminate application of Wharton's Rule. Those comments provide, in pertinent part:

> "One other important change should be noted: Since, under 8—2(a), conspiracy is committed when (with the required intent) there is an agreement to commit *any* offense, this eliminates in Illinois the application of the so-called 'Wharton Rule' in conspiracy. *** The Committee felt that the Wharton Rule fails to take into account the preventive aspect of prosecuting conspiracies, that is, to discourage the more dangerous criminal activity of several persons by punishing the preliminary agreement to engage in such activity. That the criminal activity is of such nature as to inevitably require more than one person in its accomplishment seems the more reason to punish the preliminary agreement to undertake it. Section 8—2 is intended to abrogate the Wharton Rule in Illinois, and the holding in *People v. Purcell, supra*." (Emphasis in original.) (Ill. Ann. Stat., ch. 38, par. 8—2, Committee Comments, at 474 (Smith-Hurd 1989).)

The court in *Laws* explained that *Iannelli* made clear that Wharton's Rule is only a judicial presumption to be applied unless there is legislative intent to the contrary. The committee comments quoted from above evidence a clear intent to annul application of the rule in Illinois. Thus, Wharton's Rule does not require vacation of defendant's conviction for conspiracy to commit cannabis trafficking. See also *People v. Hill* (1982), 108 Ill. App. 3d 716, 719, 439 N.E.2d 549, 551 (which recognized that section 8—2 of the Criminal Code of 1961 was intended to eliminate Wharton's Rule).

The court in *Laws*, which involved conspiracy charges relating to prostitution, found yet another justification for holding that a conspiracy charge was not precluded in that case which, we find, applies with equal force to the case at bar. The court in *Laws* stated:

"Additionally, this case does not involve any of the classic Wharton's Rule offenses (*e.g.*, dueling, bigamy, incest, adultery) in which the harm attendant upon commission of the substantive offense is restricted to the parties to the agreement. Using the reasoning set forth in *Iannelli*, large-scale prostitution activities seek to elicit the participation of additional persons who are parties neither to the conspiracy nor the resulting substantive offense. [Citation.] The impact of the conspiracy is aimed at and almost inevitably reaches nonparties to the substantive crime. Application of the Rule, therefore, is inconsistent with the general rationale of the conspiracy statute." *Laws*, 224 Ill. App. 3d at 172, 586 N.E.2d at 456.

Similarly, in the case at bar, cannabis trafficking by definition constitutes a large-scale marijuana distribution activity which seeks to elicit the participation of additional persons who are parties neither to the conspiracy nor the resulting substantive offense. The impact of the conspiracy is aimed at and inevitably reaches nonparties to the substantive crime. Thus, in the instant case as in *Laws*, application of Wharton's Rule is inconsistent with the general rationale of the conspiracy statute.

Defendant directs our attention to *People v. Urban* (1990), 196 Ill. App. 3d 310, 553 N.E.2d 740, in which the court held that Wharton's Rule would bar a conspiracy prosecution involving a buyer and seller of contraband, because the purchase of contraband necessarily involves at least two actors. Defendant argues that this case establishes the viability of Wharton's Rule in Illinois. We decline to follow *Urban* for the same reasons the *Laws* court did, that is, the decision in *Urban* related the essence of the rule but did not discuss its rationale or the legislative intent of the conspiracy statute. *Urban* does not accurately reflect the current state of the law with respect to the applicability of Wharton's Rule in Illinois and we decline to follow it. See *Laws*, 224 Ill. App. 3d at 171, 586 N.E.2d at 456.

■ Finally, we reject defendant's argument, made in anticipation of the State's claim that defendant has waived any error in this regard by his failure to raise it before the trial court, that his counsel was ineffective in failing to move to dismiss the charge prior to trial. In light of our finding that Wharton's Rule would not have precluded the conspiracy prosecution, defendant's counsel's performance in this

regard was neither deficient nor prejudicial. See *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

■ Defendant next argues that his conviction for unlawful possession of cannabis (count III) must be vacated as it constitutes an incomplete judgment. The jury returned a verdict of guilty of unlawful possession of cannabis. The trial court did not impose sentence on this conviction, however, and did not enter judgment thereon. The State agrees that, because the conviction is based on the same physical acts as defendant's other convictions, the conviction for unlawful possession of cannabis should be vacated. However, because no judgment was entered on the finding of guilty, there is nothing for us to vacate. In the absence of a judgment formally entered or sentence imposed, there is no "conviction." A jury verdict does not equal a judgment of conviction. (*People v. Cruz* (1990), 196 Ill. App. 3d 1047, 1052, 554 N.E.2d 598, 601.) Because no judgment was entered on count III of the information, defendant does not stand convicted of unlawful possession of cannabis.

Defendant's next argument is that the trial court erred in imposing consecutive sentences since the offenses of which defendant was convicted were part of a single course of conduct during which there was no substantial change in the nature of defendant's criminal objective. At the conclusion of defendant's sentencing hearing, the trial court found that the defendant is a professional narcotics dealer at both wholesale and retail, that he has made thousands of dollars off the sale of narcotic drugs in the campus community of Columbus, Ohio, and that he has run a prostitution ring in that community for a number of years. The court found that, as a result, the sentences imposed should run consecutively rather than concurrently. The court found that consecutive terms were necessary to protect the public from further criminal conduct by defendant. The court ordered that the sentences of imprisonment imposed on counts II, IV and V run concurrently to each other but consecutively to the 10-year sentence of imprisonment imposed on count VI.

Defendant filed a motion to modify, reconsider or reduce sentence arguing that, with certain inapplicable exceptions, section 5—8—4, subsection (a), of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4) prohibits consecutive sentences where all the offenses are part of a single course of conduct. The trial court held that subsection (b) of that section allows a sentencing court to impose consecutive sentences even where the offenses arose from a single course of conduct when the court determines that consecutive sen-

tences are necessary to protect the public from further criminal conduct by defendant.

On appeal, defendant repeats his argument that the trial court erred in imposing consecutive sentences because, with certain specified exceptions clearly not applicable here, section 5—8—4, subsection (a), of the Unified Code of Corrections prohibits consecutive sentences where the offenses for which defendant was convicted arose from a single course of conduct. The State counters that subsection (b) of section 5—8—4 allows the sentencing court to impose consecutive sentences even where the convictions arose from a single course of conduct when the court determines that consecutive sentences are necessary to protect the public from further criminal conduct by defendant.

No one disputes that the offenses for which defendant was convicted and may properly be sentenced, unlawful possession of cannabis without a cannabis tax stamp, conspiracy to commit cannabis trafficking, and armed violence based on unlawful possession of cannabis with intent to deliver, arose from a single course of conduct, and we so find.

Conspiracy constitutes a continuing offense where overt acts are performed in furtherance of it. Although the unlawful combination alone constitutes the offense of conspiracy and no act in furtherance of the unlawful design is necessary to complete the offense, yet every such act is regarded, in law, as a renewal or continuance of the unlawful agreement. A conspiracy once formed is presumed to exist whenever and wherever one of the conspirators does some act in furtherance of its purpose. Since the overt act is a renewal of the conspiracy, the offense is continuous so long as overt acts in furtherance of its purpose are done. (*People v. Perry* (1961), 23 Ill. 2d 147, 155, 177 N.E.2d 323, 327-28; *People v. Pascarella* (1981), 92 Ill. App. 3d 413, 418, 415 N.E.2d 1285, 1289.) The offenses of unlawful possession of cannabis without a cannabis tax stamp and armed violence based on unlawful possession of cannabis with intent to deliver were acts committed in furtherance of the conspiracy to commit cannabis trafficking. All of the offenses were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective. Nor does anyone dispute that none of the exceptions provided in section 5—8—4, subsection (a), which allow consecutive sentences even when multiple convictions arose from a single course of conduct, that is, conviction of a Class X or Class 1 felony accompanied by the infliction of severe bodily injury, or conviction of certain sex offenses, apply here.

The issue presented to us, then, is whether subsection (b) of section 5—8—4 allows consecutive sentences for multiple convictions arising from a single course of conduct when the trial court determines that such sentences are necessary to protect the public from further criminal conduct by defendant, despite the language of subsection (a) prohibiting consecutive sentences for convictions arising out of a single course of conduct except in certain specified circumstances. We view this issue as one of statutory construction and note that neither party has directed us to any case precisely on point, nor has our own research discovered any. We base our construction of the statute on its plain language, prior history, prior applications of the section by the courts, and what we find to be the legislative intent underlying the statute.

Section 5—8—4 of the Unified Code of Corrections provides in pertinent part as follows:

> "(a) When multiple sentences of imprisonment are imposed on a defendant at the same time, or when a term of imprisonment is imposed on a defendant who is already subject to sentence in this State or in another state, or for a sentence imposed by any district court of the United States, the sentences shall run concurrently or consecutively as determined by the court. *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where the defendant was convicted of a violation of Section 12—13 or 12—14 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively. ***

> (b) The court shall not impose a consecutive sentence except as provided for in subsection (a) unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4.

We think a plain reading of section 5—8—4 leads to the conclusion that subsection (b) is not an additional basis upon which to impose consecutive sentences but is a limitation on the discretion of the sentencing court to impose consecutive sentences. When a statute is unambiguously worded, it should be enforced according to the plain

meaning of its language. *People v. Paino* (1985), 137 Ill. App. 3d 645, 651, 484 N.E.2d 1106, 1110.

■ Subparagraph (a) makes consecutive sentences mandatory in certain instances (conviction of a Class X or Class 1 felony accompanied by the infliction of severe bodily injury, or conviction of certain sex offenses). Other than in these limited instances, consecutive sentences are prohibited where the convictions for multiple offenses arose out of a single course of conduct. In all other circumstances, the imposition of consecutive sentences is within the discretion of the sentencing court, subject to the limitation set forth in subsection (b). Thus, subsection (b) does not provide an additional basis upon which to impose consecutive sentences when the multiple convictions arose out of a single course of conduct but merely limits the discretion of the sentencing court in those circumstances in which the court has discretion.

Our construction of section 5—8—4 is supported by the language of the former section 5—8—4 prior to the 1985 amendment to its present form. As does the present statute, the former statute prohibited the imposition of consecutive sentences where the multiple convictions arose out of a single course of conduct except where the convictions were for a Class X or Class 1 felony accompanied by the infliction of severe bodily injury. However, the former statute did not make consecutive sentences mandatory in any circumstance but left discretion in the sentencing court even when the conviction was for a Class X or Class 1 felony accompanied by the infliction of severe bodily injury. Accordingly, subsection (b) did not contain the language, "except as provided for in subsection (a)." Thus, except when prohibited because the multiple convictions arose out of a single course of conduct, the imposition of consecutive sentences was within the discretion of the sentencing court, subject to its finding that consecutive sentences were required to protect the public from further criminal conduct by defendant. The present statute adds to subsection (b) the language "except as provided for in subsection (a)" to accommodate the mandatory language added in subsection (a). That is to say, except where consecutive sentences are mandatory, the sentencing court's discretion is limited by subsection (b).

In applying section 5—8—4, the courts of our State have interpreted the section in accordance with our construction. In *People v. Hartzol* (1991), 222 Ill. App. 3d 631, 649, 584 N.E.2d 291, 304, it was held: "Under section 5—8—4 of the Unified Code of Corrections, consecutive sentences may be imposed where the offenses were not part of a single course of conduct *and* such a term is required to protect

the public." (Emphasis added.) In *People v. Paino* (1985), 137 Ill. App. 3d 645, 651, 484 N.E.2d 1106, 1110, it was held: "The plain language of section 5—8—4 authorizes imposition of a consecutive sentence in cases not involving Class X or Class 1 felonies and not involving severe bodily injury if there has been a substantial change in the nature of the criminal objective *and* if the court finds that a consecutive sentence is required to protect the public from further criminal conduct by the defendant." (Emphasis added.) In *People v. Craig* (1977), 47 Ill. App. 3d 242, 253-54, 361 N.E.2d 736, 745, it was held: "A trial court may thus impose consecutive prison sentences upon a defendant where, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such is necessary to protect the public from further criminal conduct by the defendant *and* where the offenses were not committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." (Emphasis added.) Thus, the statute has always required *both* that the multiple convictions not arise out of a single course of conduct *and* that consecutive sentences be necessary to protect the public. The statute has not been construed, as the State would have it, to allow consecutive sentences where the court determines they are necessary to protect the public even where the multiple convictions arise out of a single course of conduct.

It has also been repeatedly held that subsection (b) of section 5—8—4, which requires that the sentencing court make a finding that consecutive sentences are necessary to protect the public from further criminal conduct by defendant, indicates that consecutive sentences are to be imposed sparingly. (*People v. Foster* (1975), 32 Ill. App. 3d 1009, 1013, 337 N.E.2d 90, 94; *People v. Zadel* (1979), 69 Ill. App. 3d 681, 683, 387 N.E.2d 1092, 1093.) Thus, subsection (b) was intended to serve as a limitation on the sentencing court's discretion, not as an extension of the cases in which consecutive sentences may be imposed.

Furthermore, the State's proposed construction of the statute would allow imposition of consecutive sentences in any case where the convictions arose out of a single course of conduct when the sentencing court determines that consecutive sentences are necessary to protect the public from further criminal conduct by defendant. However, our courts have long held under the former and present versions of section 5—8—4 that consecutive sentences may not be imposed when the multiple convictions arise out of a single course of conduct. The cases relied upon by the State to support its argument do not involve

multiple offenses arising out of a single course of conduct in the absence of one of the exceptions. *People v. Steppan* (1985), 105 Ill. 2d 310, 473 N.E.2d 1300 (sentence consecutive to sentences imposed in two unrelated cases); *People v. Logan* (1983), 117 Ill. App. 3d 753, 453 N.E.2d 1317 (sentence consecutive to sentence already being served); *People v. Lewis* (1988), 175 Ill. App. 3d 156, 529 N.E.2d 752 (conviction of Class X felony accompanied by infliction of severe bodily injury).

Accordingly, we find that the trial court erred in imposing consecutive sentences of imprisonment upon defendant. Pursuant to the power granted us by Supreme Court Rule 615(b), we vacate the judgment herein to the extent it ordered consecutive sentences and hereby enter judgment ordering that all of defendant's sentences of imprisonment in this case be served concurrently. 134 Ill. 2d R. 615(b).

Defendant's next argument is that the sentences imposed upon him are excessive in that they are disparate to that of his codefendant, Daniel Gaudette, the defendant had no prior criminal record, and the trial court considered an improper factor in sentencing, that defendant received compensation for the offense, a factor which is inherent in the offense. Defendant asks that we reduce his sentence or remand this cause for resentencing.

The presentence investigation report prepared regarding defendant indicates that he was 26 years of age, married with one six-year-old child. His wife, age 21, does not work outside the home and suffers from chronic asthma, which requires frequent medical attention. One asthma attack, induced by stress, resulted in cardiac arrest. Defendant has no prior criminal history other than a speeding offense.

Defendant's sentencing hearing was held July 12, 1991. The court indicated that it would consider the evidence presented at defendant's trial and the presentence investigation report.

Defendant's wife, Tracy Eleen Cooper, testified in mitigation that she is 21 years of age, resided with defendant up to the time of his arrest, and has a six-year-old son with defendant, Nicholas. Nicholas is very close to his father, and defendant has always provided for Nicholas. Defendant has also always provided for Tracy, taking care of her medical needs and supporting her. Tracy is destitute and living with her mother. She has applied for public aid. Defendant had always taken care of his wife and child. Tracy is unable to hold a job because of her medical problems. She has allergies and asthma.

The State presented no evidence in aggravation. The court heard arguments in mitigation and aggravation. The State recommended seven years' imprisonment on count II, unlawful possession with intent to deliver cannabis, three years' imprisonment on count IV, possession of cannabis without tax stamp, three years' imprisonment on count V, conspiracy, and nine years' imprisonment on count VI, armed violence, plus a fine of $4,000 and court costs. The State did not ask for consecutive sentences but asked that all sentences run concurrently. Defendant asked for the minimum mandatory sentence of six years' imprisonment on the armed violence conviction and that any other sentences of imprisonment run concurrently with the sentence on armed violence. Defendant spoke on his own behalf.

The court found that, based upon defendant's work history, his statements concerning his income, the value of his home and his statements on the videotape, defendant is a professional narcotics dealer at wholesale and retail. He has made thousands of dollars off the sale of narcotic drugs in the campus community of Columbus, Ohio, and has run a prostitution ring in that community for a number of years. Because of this, consecutive sentences are required to protect the public from further criminal conduct by defendant. Imprisonment is necessary for the protection of the public and probation would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice. The only factor in mitigation which the court found is that defendant has no history of prior delinquency or criminal activity. However, the court did not infer from this that defendant had led a law-abiding life. To the contrary, the court found that defendant was a professional narcotics dealer and organizer of prostitution. In aggravation, the court found that defendant had been prepared to inflict whatever serious bodily injury was necessary. He was armed with a gun which was "cocked and locked" and ready to fire. Furthermore, the court found that defendant received compensation for committing the offense in that he was going to sell the narcotics at a profit. A sentence of imprisonment is necessary to deter others from committing the same crimes. The court sentenced defendant as previously herein set forth. Defendant was given credit for 64 days spent in custody as a result of the offenses for which he was arrested.

Defendant filed a motion to modify, reconsider or reduce his sentence on July 16, 1991. Hearing was held on the motion on August 9, 1991. The motion was denied.

Defendant first argues on appeal that his sentence is excessive in that it is disparate to the sentence of his codefendant, Daniel

Gaudette. Gaudette pleaded guilty to unlawful possession of cannabis with intent to deliver and was sentenced to probation.

Defendant is correct that fundamental fairness and respect for the law require that defendants similarly situated not receive grossly disparate sentences. (*People v. Cook* (1983), 112 Ill. App. 3d 621, 623, 445 N.E.2d 824, 826.) Thus, defendants similarly situated ought to receive similar treatment in sentencing. However, although an arbitrary and unreasonable disparity between the sentences of codefendants is impermissible, the mere fact that one defendant receives a substantially longer sentence than another does not, by itself, establish a violation of fundamental fairness. (*People v. Kline* (1982), 92 Ill. 2d 490, 508, 442 N.E.2d 154, 162.) A disparate sentence may be supported by either a more serious criminal record or greater participation in the offense. (*Cook*, 112 Ill. App. 3d at 623, 445 N.E.2d at 826.) In other words, where the defendants are not similarly situated, disparate sentences may be justified.

■ There is no question that there is a disparity between the sentence received by Gaudette and that received by defendant. The question is whether the two defendants were similarly situated. The record contains no information with respect to the prior criminal history of Gaudette, nor any other information which might have been considered relevant in his sentencing. It is the defendant's burden to produce a record from which a rational comparison of sentences can be made. (*Kline*, 92 Ill. 2d at 509, 442 N.E.2d at 163.) The defendant must demonstrate that he and the other codefendant were similarly situated with respect to background, prior criminal history, potential for rehabilitation, or involvement in the particular offense which would justify a consideration of the disparity. (*People v. Gangestad* (1982), 105 Ill. App. 3d 774, 785, 434 N.E.2d 841, 850.) Where a reviewing court is unaware of the factors which the court relied on in sentencing a codefendant, it cannot be determined whether or not the disparity in sentences is justified. (*Kline*, 92 Ill. 2d at 509, 442 N.E.2d at 163.) Thus, our review of this issue is severely limited.

Defendant argues that his codefendant, Gaudette, is more culpable in the instant offense than defendant in that he instigated the drug transaction by contacting defendant, supplying the drugs, and arranging to bring the cannabis from Texas to Ohio. Defendant argues that he was a reluctant participant and would not have been involved had Gaudette not initiated and persisted in the deal.

While a greater sentence may be imposed upon a defendant who has been determined to be a leader or instigator in the commission of an offense (*People v. Martin* (1980), 81 Ill. App. 3d 238, 245-46, 401

N.E.2d 13, 19), the record does not support defendant's contention that Gaudette was the instigator of the offense. The sentencing court found that defendant was a professional narcotics dealer who had been selling and profiting from drugs for some time prior to the instant offense. While defendant argues that Gaudette, as the seller/supplier of the drugs, should be held more culpable than defendant, who merely bought the drugs, the record demonstrates that Gaudette was merely a "mule" or deliverer of drugs, while defendant was going to distribute or sell the drugs at a profit in the campus community of Columbus. Thus, defendant had a greater degree of culpability in this respect. It does not appear from the record that defendant was a reluctant participant in the offenses but that he was the "boss" and Gaudette his "mule."

There are other differences in the situations of the two codefendants apparent in the record to justify the disparity between their sentences. For example, there is no evidence that Gaudette was armed during commission of the offense, as was defendant. There is no evidence that Gaudette was involved in any other criminal activity, while the sentencing court found that defendant ran an organized prostitution ring. Furthermore, Gaudette admitted his guilt and cooperated in the successful prosecution of defendant. It is proper for a trial court to grant leniency in sentencing to a defendant who by his plea ensured prompt and certain application of correctional measures to him, acknowledged his guilt and showed a willingness to assume responsibility for his conduct, and cooperated in the successful prosecution of other offenders. (*People v. Massarella* (1979), 80 Ill. App. 3d 552, 573, 400 N.E.2d 436, 453.) Based upon the record before us, we find sufficient differences between the situations of the two codefendants to justify the disparity in their sentences.

■ Defendant also argues that the trial court considered an improper aggravating factor, that defendant received compensation for commission of the offense, in sentencing him. The trial court did consider the fact that defendant received compensation for commission of the offense. In pronouncing sentence, the court stated: "I find the defendant received compensation for committing the offense in the terms that he was going to sell the narcotics at a profit." This was error. (*People v. Berry* (1984), 122 Ill. App. 3d 1035, 462 N.E.2d 530.) However, reliance on an improper sentencing factor does not always require remandment for resentencing. When it can be determined from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a

greater sentence, remandment is not required. *Berry*, 122 Ill. App. 3d at 1037, 462 N.E.2d at 532.

Defendant argues that, in imposing sentence, the trial court focused on the fact that defendant received compensation from the offense in that it relied on the fact that defendant was a professional narcotics dealer and earned great profit. We do not agree. Instead, we find that the sentencing court referred to this improper factor only in passing and that it did not lead to a greater sentence. It appears from the record that what the sentencing court most relied upon was the fact that defendant made his living through illegal activities. The court found that lengthy prison sentences were necessary to protect the public from further criminal conduct by defendant and accordingly imposed consecutive sentences. The court was not concerned with defendant's drug activities because he profited by them but because they demonstrated that he was not a law-abiding citizen and was not likely to become one. The court found that probation would deprecate the seriousness of the offense and that a sentence of imprisonment was necessary to deter others from committing similar offenses. The court also found in aggravation that the defendant was prepared to inflict whatever serious bodily injury was necessary in that he was armed with a cocked and locked gun. In mitigation, the court found only that defendant had no prior criminal history, but the court noted that this did not mean that defendant was a law-abiding citizen. That defendant received compensation for the offense was mentioned by the court as one of the last factors it considered and the court did not expound on this factor as it did on the others.

The court here was not focused on the fact that defendant received compensation from the offense but was focused on defendant's apparent lack of rehabilitative potential as evidenced by his numerous criminal activities. Accordingly, we conclude that the length of defendant's sentences was not increased based on the court's statement that defendant had received compensation for committing the offenses, and the cause need not be remanded for resentencing on this basis.

■ Finally, defendant argues that his sentence is excessive in light of his age and his lack of criminal history, that the court did not give appropriate weight to the fact that sentencing defendant to prison would result in excessive hardship to his dependents, and that the court gave too much weight to the need to impose a sentence of imprisonment to deter others from committing similar crimes. The imposition of a sentence is a matter of judicial discretion and, absent an abuse of that discretion, the sentence of the trial court may not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368

N.E.2d 882, 883.) The trial court is normally the proper forum in which a suitable sentence is to be determined, and the trial court's decisions in regard to sentencing are entitled to great deference and weight. (*Perruquet*, 68 Ill. 2d at 154, 368 N.E.2d at 884.) We think the record in the instant case demonstrates that the trial court did give appropriate consideration to defendant's age, his lack of prior convictions, the fact that his family would suffer hardship should he be sentenced to prison, and the need to deter others from similar crimes. We find no abuse of discretion in the sentencing decision of the trial court and will not disturb it on review.

 The final argument presented by defendant is that, pursuant to section 110—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 110—14), he is entitled to a $5 credit toward his fine for every day he spent in custody on the instant offense prior to sentencing. The State concedes that this is correct. (See *People v. Johns* (1984), 130 Ill. App. 3d 548, 474 N.E.2d 739; *People v. Stevens* (1984), 125 Ill. App. 3d 516, 466 N.E.2d 296.) Defendant was given credit toward his sentences of imprisonment for 64 days spent in custody on the instant offenses. The trial court also imposed a fine on defendant in the amount of $4,000. Accordingly, defendant is entitled to a credit of $5 for each of the 64 days he spent in custody on the instant offenses prior to sentencing. Pursuant to the powers granted us by Supreme Court Rule 615(b), we hereby modify the judgment entered herein to grant defendant a credit of $320 toward the fine imposed.

For the foregoing reasons, the judgment of the circuit court of Effingham County is affirmed in part, vacated in part and modified in part, and judgment is entered ordering defendant's sentences to be served concurrently.

Affirmed in part; vacated in part; modified in part; and judgment entered.

GOLDENHERSH, J., concurs.

JUSTICE WILLIAM A. LEWIS, specially concurring:

I agree with the majority opinion in all aspects except for one small distinction that I consider to be very important. The majority opinion finds that defendant made a "sufficient admission of commission of the elements of the offense to warrant the giving of an entrapment instruction." (239 Ill. App. 3d at 350.) I agree that the evidence clearly shows that defendant admitted on the witness stand that he

had possession of the cannabis, that he had a dangerous weapon in his possession while he had possession of the cannabis, and that he had the intent to deliver the cannabis back to Gaudette, who he knew was going to resell the cannabis. I, therefore, agree with the majority opinion that the trial judge erred in refusing to give the entrapment instruction on the ground that defendant had not admitted his guilt. However, I believe the trial judge was correct in not giving the entrapment instruction, because defendant had not as a matter of law established the affirmative defense of entrapment.

The majority opinion holds in effect that this court can review the evidence as to entrapment and if the evidence against entrapment is so overwhelming we can find that the refusal to give the entrapment instruction is harmless error. Isn't this just another way of holding that defendant had not as a matter of law established the defense of · entrapment? If defendant had not as a matter of law presented sufficient evidence to establish the defense of entrapment, then the trial judge should not have given the instruction to the jury. *People v. Barnard* (1991), 208 Ill. App. 3d 342, 567 N.E.2d 60.

The majority opinion cites *People v. Austin* (1989), 133 Ill. 2d 118, 549 N.E.2d 331, which, although it involved voluntary manslaughter, indicated: "The evidence upon which defendant relies must rise above the level of a mere factual reference or witness' comment, for otherwise defendant could force the trial court to include unlimited instructions which are not related to the case." (*Austin*, 133 Ill. 2d at 125, 549 N.E.2d at 334.) Further, this court in *People v. Barnard* (1991), 208 Ill. App. 3d 342, 567 N.E.2d 60 (an affirmative defense case of use of force in defense of a dwelling), held that there must be some evidence of the affirmative defense before an instruction as to that defense is warranted.

Defendant testified in effect that he was unemployed but he just happened to have $5,543 in cash in his pocket and that he drove from Ohio to Illinois in response to three telephone calls to help an "acquaintance," who already owed him money and whom defendant knew so well that defendant felt it necessary not only to bring a loaded gun to the meeting but also to have the gun cocked. Defendant admitted that he "loaned" the money to Gaudette with the cannabis as security and that defendant was going to take the cannabis to Ohio where he would return it to Gaudette, who defendant knew was going to resell the cannabis. Even if we believe defendant's version, where is there any evidence that defendant was not predisposed to commit the crimes as charged? Accordingly, there was no error in not giving an entrapment instruction.