(No. 68841.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROSALYNE GILLESPIE, Appellee.

*Opinion filed July 3, 1990.*

Neil F. Hartigan, Attorney General, of Springfield, and Edward A. Burmila, Jr., State's Attorney, of Joliet (Robert J. Ruiz, Solicitor General, Terence M. Madsen, David E. Bindi and Thomas L. Ciecko, Assistant Attorneys General, of Chicago, and Kenneth R. Boyle, John X. Breslin and Vicki L. Seidl, all of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Verlin R. Meinz, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

CHIEF JUSTICE MORAN delivered the opinion of the court:

Defendant, Rosalyne Gillespie, was charged by information in the circuit court of Will County with one count of bribery in violation of section 33—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 33—1(a)). Defendant testified and denied committing the bribery. The jury, however, found defendant guilty of bribery, a

Class 2 felony (Ill. Rev. Stat. 1985, ch. 38, par. 33—1(f)). The circuit court sentenced defendant to 36 months' probation and 750 hours of community service. Defendant appealed her conviction, arguing that the trial judge erred in refusing to instruct the jury on the entrapment defense (Ill. Rev. Stat. 1985, ch. 38, par. 7—12).

On appeal, the appellate court reversed defendant's conviction and remanded for a new trial. The appellate court acknowledged this court's long-standing rule that the entrapment defense is not available to a defendant who denies committing the offense charged. (*People v. Fleming* (1971), 50 Ill. 2d 141, 144; *People v. Moran* (1941), 378 Ill. 461, 470-71.) Nevertheless, the appellate court concluded that this long-standing entrapment defense rule was "abrogated" by the United States Supreme Court in *Mathews v. United States* (1988), 485 U.S. 58, 99 L. Ed. 2d 54, 108 S. Ct. 883, and that the trial judge, therefore, erred in refusing to instruct the jury on the entrapment defense. (181 Ill. App. 3d 1044.) This court granted the State's petition for leave to appeal (107 Ill. 2d R. 315).

The only issue presented for review is whether a defendant who denies committing the offense charged is entitled to have the jury instructed on the entrapment defense.

As a longtime resident of Joliet, Illinois, defendant became acquainted with Booker Matthews (Matthews), the chief of security at the Illinois Department of Corrections, Youth Division, Joliet Facility (Joliet Facility), and Samuel Jones (Jones), a youth supervisor at the Joliet Facility. As chief of security at the Joliet Facility, Matthews' responsibilities included assigning and supervising 111 employees, including Jones.

The State's evidence revealed that, on September 21, 1986, defendant approached Matthews in the parking lot of the Sahara Lounge in Joliet to discuss Jones' employ-

ment. During this discussion, defendant suggested that Jones should be reassigned to a less stressful position within the Joliet Facility and offered to "make it worth [Matthews'] while" if Jones was, in fact, reassigned. Matthews declined defendant's offer, but she gave him her telephone number in case he changed his mind. Matthews promptly reported this incident to Joliet Facility officials who notified the Illinois Department of State Police (State Police). The State Police then obtained judicial authorization to equip Matthews with a concealed recording device and to audiotape and videotape his conversations with defendant.

Shortly thereafter, on October 31, 1986, Matthews telephoned defendant, mentioned their previous discussion and arranged a meeting for November 3, 1986. On November 3, 1986, Matthews met defendant at the Howard Johnson's restaurant in Joliet. During their meeting, defendant offered to pay Matthews $1,000 to reassign Jones to another position within the Joliet Facility and agreed to meet with Matthews at a later date.

Four days later, on November 7, 1986, Matthews met defendant at Earl's Cafe in Joliet. During their meeting, defendant gave Matthews $400 and promised to give him the remaining $600 after Jones was reassigned. Defendant also agreed to meet with Matthews at a later date and to bring Jones. Immediately thereafter, Matthews surrendered the $400 to Special Agent Ronald Wilson of the State Police.

Less than one month later, on December 2, 1986, Matthews met defendant and Jones at Earl's Cafe. During their meeting, Jones complained about a recent incident at the Joliet Facility and expressed interest in a supply supervisor position. Instead, Matthews reassigned Jones to a trip supervisor position.

Ten days later, on December 12, 1986, Matthews telephoned defendant and asked her about the remaining

$600. Defendant explained that Jones did not have the money, but assured Matthews that she would get him the money. Matthews never received the remaining $600.

One week later, on December 19, 1986, defendant was arrested, transported to District Five State Police headquarters, processed and read her *Miranda* rights. After receiving her *Miranda* rights, she gave an audiotaped statement to the State Police. In her statement, defendant admitted meeting with Matthews to discuss Jones' employment. Defendant, however, denied giving Matthews any money.

Defendant testified in her own behalf and stated that she was involved in producing and staging musical programs for community groups. Defendant stated that she met with Matthews to discuss the possibility of staging a Christmas program at the Joliet Facility. Defendant admitted that she also discussed Jones and his stressful position at the Joliet Facility. Defendant also admitted that she gave Matthews $400. She, however, denied giving Matthews the money to reassign Jones. Instead, she stated that she gave Matthews the money in order to defray the cost of staging the Christmas program.

During a meeting on jury instructions, defense counsel tendered an instruction on the entrapment defense. The State objected and argued that defendant denied committing the bribery. The trial judge agreed with the State and refused to instruct the jury on the entrapment defense. Defendant was convicted. On appeal, the appellate court reversed and remanded.

The entrapment defense provides:

> "A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or fa-

cility for committing an offense in furtherance of a criminal purpose which such person has originated." Ill. Rev. Stat. 1985, ch. 38, par. 7—12.

A precondition to raising the entrapment defense is that the defendant must admit that a crime was committed and that he or she committed it. (*People v. Arriaga* (1981), 92 Ill. App. 3d 951, 954.) Likewise, this court has consistently held that the entrapment defense is not available to a defendant who denies committing the offense charged. (*Fleming*, 50 Ill. 2d at 144 ("one may not at once deny the commission of the offense and claim entrapment"); *Moran*, 378 Ill. at 470-71 ("The [jury] instructions [on the entrapment defense] had no application to [the defendants], since both of them denied they knew anything about the [crime] and denied that they had any knowledge of the conspiracy or participated in it").) The logical reasoning behind the long-standing entrapment defense rule is that it is both factually and legally inconsistent for a defendant to deny committing the offense and then to assert as a defense that he committed the offense, but only because of incitement or inducement by the authorities. *Fleming*, 50 Ill. 2d at 144; *Moran*, 378 Ill. at 471.

In spite of this court's long-standing entrapment defense rule, defendant contends that the trial judge erred in refusing to instruct the jury on the entrapment defense. In support of her contention, defendant cites to the recent United States Supreme Court decision in *Mathews*. In *Mathews*, a majority of the Supreme Court held that a defendant in a Federal criminal prosecution is entitled to have the jury instructed on the entrapment defense whenever there is sufficient evidence from which a reasonable juror could find entrapment, *even if the defendant denies one or more elements of the crime.* (*Mathews*, 485 U.S. at 62, 99 L. Ed. 2d at 60, 108 S. Ct. at 886.) Defendant asserts that all courts, including Illi-

nois courts, are bound by the *Mathews* decision and that this court's long-standing rule has, therefore, been abrogated.

In spite of defendant's assertion, State courts are not required to follow United States Supreme Court precedent unless the result therein is mandated by the Constitution of the United States. (*Harris v. Rivera* (1981), 454 U.S. 339, 344-45, 70 L. Ed. 2d 530, 535, 102 S. Ct. 460, 463-64 ("Federal judges have no general supervisory power over state trial judges; they may not require the observance of any special procedures except when necessary to assure compliance with the dictates of the Federal Constitution").) Accordingly, it must be determined whether the *Mathews* decision was of such constitutional magnitude.

The answer to the aforementioned question is contained in the *Mathews* opinion itself. In formulating the holding in *Mathews*, the majority never referred to the Constitution; instead, they merely relied on Federal common law, the Federal Rules of Civil Procedure and "general propositions." (*Mathews*, 485 U.S. at 63-66, 99 L. Ed. 2d at 61-63, 108 S. Ct. at 887-88; see also *United States v. Russell* (1973), 411 U.S. 423, 433, 36 L. Ed. 2d 366, 374, 93 S. Ct. 1637, 1643 ("[entrapment] defense is not of a constitutional dimension").) Moreover, the dissenting justices noted that the *Mathews* decision "[was] not compelled by the Constitution" (*Mathews*, 485 U.S. at 69, 99 L. Ed. 2d at 65, 108 S. Ct. at 890 (White, J., & Blackmun, J., dissenting).) Furthermore, the dissenting justices added that the holding in *Mathews* was not even compelled by a Federal statute, the Federal Rules of Criminal Procedure or the bulk of authority. (*Mathews*, 485 U.S. at 69, 99 L. Ed. 2d at 65, 108 S. Ct. at 890 (White, J., & Blackmun, J., dissenting).) As the decision in *Mathews* was not of constitutional magnitude, this court is not bound to follow the decision therein. See

also *Morris v. State* (1989), 300 Ark. 340, 342, 779 S.W.2d 526, 527 (supreme court of Arkansas is "not bound by the *Mathews* decision as it involves the construction of federal criminal procedure law and does not have a footing in constitutional law"); *Hubbard v. State* (Tex. Crim. App. 1989), 770 S.W.2d 31, 39 (Texas Court of Criminal Appeals is not bound by the *Mathews* decision which was based on the "substantive law of entrapment rather than due process or other federal constitutional principles").

Moreover, we are not persuaded to follow the Supreme Court's decision in *Mathews*. Our long-standing rule regarding the entrapment defense is based on common sense and sound logic. We, therefore, reaffirm the rule that a defendant who denies committing the offense charged is not entitled to have the jury instructed on the entrapment defense.

For the foregoing reasons, we reverse the decision of the appellate court and affirm the decision of the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*