THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL WALKER, Defendant-Appellant.

First District (2nd Division)   No. 1—91—0550

Opinion filed October 18, 1994.

James Geis, of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Howard D. Weisman, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

Defendant Michael Walker was indicted with four other men for delivery of more than 100 grams of a powder containing cocaine, a controlled substance. A jury found him guilty of the charged offense, and the court sentenced him to nine years' imprisonment and fined him $5,600 as the street value of the seized cocaine. Defendant appeals, contending that the circuit court erred in refusing to instruct the jury on the entrapment defense and in denying his motion for disclosure of the identity of a confidential informant. He also contests the amount of his fine. We reverse the judgment and remand for a new trial.

At defendant's jury trial,[1] first to testify was Michael J. Cooper, an undercover Illinois State Police officer who met defendant for the first time on July 13, 1988, when a confidential informant, whom he identified under her alias name of Kim James but whom defendant knew as "Jennifer," took him to defendant's house. Defendant, Cooper, "Jennifer," and another man drove to a nearby location to purchase one-eighth ounce of cocaine for $180; defendant and the other man alighted from the car and made the purchase. Cooper then asked defendant if he could get eight ounces of cocaine. Defendant replied that he could, and Cooper wrote down his beeper number for him. Cooper did not see or hear from defendant until two weeks later, on July 27, when defendant called Cooper's beeper number at 11:30 a.m. When Cooper returned the call, defendant offered him eight ounces of "good quality" cocaine for $7,600; Cooper accepted the terms. In the same telephone conversation, a man who identified himself as "Silkie G." said that he could deliver eight ounces of good quality cocaine. They arranged a meeting at 4 p.m. that day in a shopping center parking lot.

Cooper arrived 10 minutes early with another undercover officer, Clem Ferguson, in the car and others on surveillance. Defendant was already there; he and another man, later introduced by defendant as Silkie G., approached Cooper's car from different directions. After telling Cooper he would fetch the cocaine and return momentarily, Silkie G. drove away in a brown Cutlass. Meanwhile, Ferguson moved to the back seat of Cooper's car and defendant sat in the front seat. Defendant told Cooper that Silkie G.'s real name was Eric Jones.

After waiting a while, Cooper asked defendant to call Jones. Defendant made a 10-minute call from the nearby pay phone, returned to the car, and went back to make a few other calls. When defendant returned to Cooper's car again, Jones arrived alone in the Cutlass. Jones explained to Cooper that the runner had car trouble, and he left after saying he would return in a few minutes. When Jones returned at 4:30 p.m., another car followed him into the parking lot. The two cars parked about 100 feet from Cooper's car. Four men, including Jones, alighted from the cars and talked for 30 seconds. Jones walked towards Cooper's car, clutching the front of his shirt with his right hand. Defendant left Cooper's car, and Jones took his place. Cooper asked if Jones had the cocaine, and he said he did.

---

[1]Defendant was tried separately from, but simultaneously with, Eric Jones and the two other men, all of whom waived a jury.

Jones then pulled a white Walgreen's bag from under his shirt and gave it to Cooper, who examined it and then handed it to Ferguson for his inspection. It contained four clear plastic bags of white powder. Cooper pulled out a "flash roll of money" and began counting it. Cooper then gave a prearranged signal to the other law enforcement agents. After defendant, Jones, and the other men were arrested, Cooper field-tested the white powder for the presence of cocaine; the test was positive. He sealed the Walgreen's bag and each of the four clear bags with tape, placing his initials and I.D. number on the tape. Cooper kept the bags at his home overnight in a locked cabinet and took them the next day to the crime lab, where he gave them to Richard Paulas for testing.

Sergeant Clem Ferguson's testimony parallelled that of Cooper. The testimony of Officer James Kizart, who was on surveillance, was substantially similar.

After Cooper gave him the bags, Richard A. Paulas, a forensic scientist for the Illinois State Police in 1988, tested the white powder for the presence of controlled substances. Until Paulas began the tests, the bags were sealed and placed in an evidence vault; when he retrieved them, they were still sealed. Before testing, Paulas weighed the white powder on a scale that had been tested for accuracy; it totaled 106.7 grams.[2] He performed a preliminary screening test on powder from each of the four bags; the results of each indicated the presence of cocaine. Paulas then conducted a number of other tests, the results of which led him to form his expert opinion that the white powder here contained cocaine. He taped the bags closed after analyzing the powder, and he noted that the tape he saw in court was the same he had used to seal them.

After his motion for a directed verdict was denied, defendant testified in his own defense. He first met a man named Greg in late 1986, when defendant worked for him delivering telephone books. Defendant did not hear from Greg again until late May 1988, when he began calling defendant repeatedly at home. Defendant described conversations in which he told Greg that he "d[id]n't get involved in those type[s] of things" and that he purchased only in quantities sufficient for his own consumption. Eventually, Greg asked if defendant wanted to meet his sister, "Jennifer." Defendant and "Jennifer" conversed on the telephone, and he told her he used cocaine and that

[2]One bag had 29.5 grams, another 24.6 grams, the third had 27.8 grams, and the fourth had 24.8 grams.

he wanted to do cocaine with her. Defendant first saw "Jennifer" in person on July 13, when she came to his house with Cooper, whom she introduced as her cousin. When she asked defendant if he knew where to obtain a small amount of cocaine, he took her, Cooper, and another friend to get it. Cooper and "Jennifer" gave him money to buy the cocaine. When defendant returned to the auto, he gave Cooper the cocaine, which Cooper inhaled and announced was "pretty good."

The following day, "Jennifer" called him and said Cooper wanted more cocaine. She called again that night and asked him to get eight ounces of cocaine; Greg too called daily with the same request. Defendant told each of them that he did not get involved in purchases of such large quantities. Tired of Greg's calls, and in hopes of receiving some cocaine for himself as a reward, defendant admitted to calling Cooper on July 18, 1988, to arrange a cocaine connection. On that day, he and Cooper unsuccessfully attempted to purchase cocaine from the seller in the earlier transaction and three other sellers. Although "Jennifer" ceased her calls, Greg continued his almost daily barrage of telephone calls. On the morning of July 27, defendant found a cocaine source, called Officer Cooper, and helped arrange a place and time for the delivery. He denied, however, seeing the transaction involving cocaine, and when asked about his knowledge of the cocaine transaction that was to occur that day, defendant gave the following testimony in response to the prosecutor's questions:

"Q. And you knew that a cocaine transaction—that there was going to be a sale of cocaine when Cooper and Silky G[.] got together, right?

A. I didn't know.

Q. Well, you thought Cooper and Silky G[.] were going to try to get it, right?

A. That's correct.

Q. And you were willing to put Cooper and Silky G[.] together?

A. That's correct.

Q. And you thought there was a good possibility of cocaine?

A. I thought they were going to talk.

Q. And you figured that if a deal didn't occur that day you would have hooked up Cooper and Silky G[.] and they could work it out?

A. They were goin' do what they wanted to do.

Q. And what they wanted to do probably would have been a cocaine deal, right?

A. I don't know."

Defendant's mother also testified. She met Greg around 1985. In

1986 or 1987, when Greg was looking for people to deliver phone books, she recommended her son. She corroborated her son's testimony that Greg had called a number of times for defendant in the days between July 13 and July 27. Defendant's sisters, Cassandra Wilson and Genevosineo Welch, testified similarly.

In the State's rebuttal case, Cooper denied knowing or working with an informant named Greg. He also denied inhaling the cocaine that he had purchased on July 13. During his earlier testimony, Cooper had denied that he had any contact with defendant on July 18.

At the jury instruction conference, defense counsel objected to the absence of an entrapment instruction. The State countered that according to the supreme court decision in *People v. Gillespie* (1990), 136 Ill. 2d 496, 557 N.E.2d 894, a precondition for an entrapment instruction is that the defendant admit that he committed the essential elements of the crime at issue, and here defendant never admitted that he participated in the offense. The court determined that the instruction would not be given because defendant's testimony was a denial that he knew a crime was being committed or that Cooper and Jones would ever consummate a transaction.

While deliberating, the jury sent out the following question: "Does the law allow for a person to be set up in entrapment?" The court responded, "Relative to your question, you have received instructions regarding the law in this case." Defense counsel responded "right" when the court stated that nobody had any objection to this response. The court then added, "Read the instructions and apply the instructions according to the facts in this case." Defendant challenged this as an instruction to come to a conclusion.

The jury found defendant guilty. At the sentencing hearing, the State conceded that there was no direct evidence as to the quantity or percentage of purity of the cocaine but suggested that the "street value" of the cocaine should be the price quoted to Cooper, which the prosecutor said was $5,600.[3] The court sentenced defendant and Jones to the minimum, nine years, and fined each man $5,600, stating:

> "The fines are required now. $5600 the Court considers to be the street value based upon the agreement of the amount to be paid for[ ] the cocaine that was involved in this transaction, and accordingly each defendant is so fin[e]d $5600."

---

[3]Apparently, the prosecutor was thinking of testimony that no one gave but that he had alluded to in his opening: that Jones had offered Cooper only four, not eight, ounces, for which he was to pay $5,600. In fact, no evidence had been elicited concerning that quantity or that price.

# I

Defendant first argues that the circuit court abused its discretion in not instructing the jury on the defense of entrapment. He concedes that, to avail oneself of this defense, one must admit to having committed a crime, but he contends that he did so by testifying that he secured a supplier for four ounces of cocaine, called Cooper to arrange the meeting, and called Jones to tell him of the arrangements for delivery. He contends that neither his denial of witnessing the transaction nor his saying he did not know if a sale would occur when Jones and Cooper met constitutes a denial of the offense. Instead, he argues, he testified only that he did not actually see the transaction, given that he had walked away from Cooper's car when Jones arrived, and that although he thought that Cooper and Jones would consummate the sale, he could not have known for certain, for he had no control over the outcome of the meeting. Taken as a whole and subjected to a fair reading, defendant insists, the gist of his testimony was to admit his role in the transaction.

If a defendant's conduct "[was] incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person," the defendant is not guilty unless he was "merely afford[ed] *** the opportunity or facility for committing an offense in furtherance of a criminal purpose which [he] ha[d] originated." (Ill. Rev. Stat. 1987, ch. 38, par. 7—12 (now 720 ILCS 5/7—12 (West 1992)).) To invoke the entrapment defense, a defendant must admit committing the elements of the charged offense while denying that he was inclined to do so before law enforcement agents intervened. (*People v. Cooper* (1992), 239 Ill. App. 3d 336, 350, 606 N.E.2d 705, 715.) Accordingly, the entrapment defense may not be raised by a defendant who disclaims committing the essential elements of the crime. *People v. Gillespie* (1990), 136 Ill. 2d 496, 501, 557 N.E.2d 894, 896-97; *People v. Arriaga* (1981), 92 Ill. App. 3d 951, 955, 416 N.E.2d 418, 421 (the entrapment defense is not available if the defendant denies acting with the required mental state).

When deciding whether to give the instruction, the circuit court must view the evidence in the light most favorable to the defendant, and the instruction is justified even if only slight evidence is presented that, if believed, establishes the elements of the defense. (*Cooper*, 239 Ill. App. 3d at 351, 606 N.E.2d at 716.) Here, defendant is charged, under the accountability theory, with responsibility for Jones' knowing delivery of 100 grams or more of a substance containing cocaine, on the grounds that defendant, with the intent to promote or facilitate this crime, knowingly aided or attempted to aid Jones in planning or committing the offense. Ill. Rev. Stat. 1987, ch.

38, par. 5—2(c) (now 720 ILCS 5/5—2(c) (West 1992)); Ill. Rev. Stat. 1987, ch. 56¹/₂, par. 1401.1(1) (West Supp. 1988) (now 720 ILCS 570/401.1(1) (West 1992)).

In *Gillespie*, the defendant, charged with bribery, admitted to giving money to a correctional officer, while denying that the purpose was to obtain a favorable job assignment. The defendant claimed that the funds were a donation for a Christmas program. (*Gillespie*, 136 Ill. 2d at 500.) The defendant was charged with giving a public official money "[w]ith intent to influence the performance of any act related to the employment or function" of the official. (Ill. Rev. Stat. 1985, ch. 38, par. 33—1(a).) In disputing the purpose for the giving of funds, the defendant denied the essence of the bribery charge and, thereby, was not entitled to raise an entrapment defense.

In contrast, viewing the record as a whole, this defendant's testimony did not constitute a denial of an essential element of the crime. Although defendant did offer conflicting statements throughout his testimony, when considering the evidence in the light most favorable to defendant, the "slight evidence" standard of *Cooper* (239 Ill. App. 3d at 351, 606 N.E.2d at 716) was satisfied. Defendant had been charged with knowingly aiding the sale of cocaine, action he specifically admitted by conceding the elements of the offense. The State had no burden to prove that defendant either saw the transaction or knew in advance that the transaction would succeed.

The substance of defendant's litigation strategy, from opening statements to closing arguments, concerned entrapment. Defendant claimed that he had no intention of involving himself in the crime, and his participation was induced by the police. Moreover, despite making a specific inquiry as to entrapment, the jury did not receive any instruction concerning that subject. Thus, as the record does not "demonstrat[e] that the result of the trial would not have been different if the proper instruction had been given" (*People v. Johnson* (1991), 146 Ill. 2d 109, 137, 585 N.E.2d 78), the failure to give the instruction was prejudicial.

Accordingly, defendant's conviction is reversed and this matter is remanded for a new trial.

## II

Defendant also contends that the circuit court erred in denying his motion for disclosure of the identity of "Jennifer." Because we reverse on the first issue raised by defendant, there is no need for us to reach this issue here. Similarly, because defendant is to receive a

new trial, there is no need for this court to consider whether the amount of his fine was appropriate.

Reversed and remanded.

SCARIANO and McCORMICK, JJ., concur.