THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FREDERICK ARNDT, Defendant-Appellant.

Second District    No. 2—03—0660

Opinion filed August 18, 2004.

Zachary M. Bravos, of Law Offices of Zachary M. Bravos, of Wheaton, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz and Sally A. Swiss, both of State's Attorneys Appellate Prosecutor's Office, of counsel), and Catherine A. Voigt, of Glen Ellyn, for the People.

JUSTICE BOWMAN delivered the opinion of the court:

After a bench trial, defendant, Frederick Arndt, was found guilty of two counts of indecent solicitation of a child under section 11—6 of the Criminal Code of 1961 (Code) (720 ILCS 5/11—6 (West 2002)). The trial court sentenced him to 30 months of probation with various conditions. On appeal, defendant argues that (1) he was not proven guilty beyond a reasonable doubt; (2) he was entrapped; (3) a fatal variance existed between the indictment and the proof at trial; and (4) section 11—6 violates the first amendment. We affirm.

On April 10, 2002, defendant was charged by indictment with two counts of indecent solicitation of a child. Both counts alleged that, between August 1, 2001, and March 10, 2002, defendant "knowingly solicited a child he believed to be under the age of 17, to do an act of sexual penetration which if done would have been Aggravated Criminal Sexual Abuse." At trial, the State presented five exhibits that defendant stipulated were admissible.

Exhibit No. 1 consisted of the stipulated testimony of Detective Mark Pleasant, an investigator with the Lake County State's Attorney's office who was assigned to the Lake County Children's Advocacy Center. As reflected in his reports, Pleasant signed onto America Online (AOL) using several fictitious profiles of teenage girls under different screen names. Beginning in August 2001, Pleasant had several Internet contacts with defendant, who used the screen name "ARhino6575."

On August 9, 2001, Pleasant had an instant message conversation with defendant while using the screen name "Kristin15IL." Kristin15IL's online profile stated that she was a 15-year-old female from Waukegan. Defendant began the conversation by asking whether she liked older guys. Kristin15IL informed defendant that she was 15 years old and defendant represented that he was 28. During the course of their conversation, defendant repeatedly asked her what she liked to "do" with guys and whether she used birth control pills and condoms.

On September 13, 2001, under the screen name "GirlinIL," Pleasant entered a chat room called "Places-Chicago." GirlinIL's online profile stated that she was a 15-year-old female from Lake County

named Loren. Although Pleasant did not engage in any conversation in the chat room, GirlinIL received a message from defendant later that day. During the instant message conversation, defendant asked GirlinIL whether she liked older men. Defendant represented that he was 34 years old; GirlinIL responded that she was 15. Defendant asked GirlinIL what she looked like and whether she liked "to be with older men" sexually. Defendant also asked for details of her previous sexual experiences and whether she was taking birth control pills. Defendant asked if she would like him to "pull out" before ejaculating and suggested that she perform oral sex on him.

In addition, defendant inquired whether GirlinIL would like to meet an older man, although he stated that he would keep their relationship secret because of their ages. Defendant indicated that people would think they "were father and daughter or relatives." Defendant informed her that he liked to date younger women because he could teach them what a man "likes in bed." He further informed her that he had met a 16-year-old girl online and that they had had sex. Defendant asked GirlinIL where she lived and where and when they could meet. GirlinIL responded that she was deaf and tutored at home. As a result, she could meet him or chat with him only when her mother was at work and her tutor was not present. Pleasant then sent defendant a picture of GirlinIL, which was actually a picture of a female Lake County deputy when she was 15 years old. At the end of their conversation, defendant asked GirlinIL if she would let him know when she would be ready to have a baby with him. She responded that she was only 15 years old, that defendant was playing a "big joke" on her, and that she was hurt and "pissed." GirlinIL signed off.

On September 21, 2001, Pleasant received a one-line message from defendant after entering a chat room under the screen name of "Kaytea847." Kaytea847's profile stated that she was a 14-year-old female from Waukegan. However, Pleasant, posing as Kaytea847, never replied.

In January 2002, GirlinIL sent defendant an instant message indicating that he was on her "buddy list," but she could not remember why. Defendant responded that they had talked a few times before and that she liked older men. GirlinIL indicated that she had just turned 16 years old, although she did not have a driver's license. Defendant stated that he was 44 years old. Defendant then asked if she wanted to meet at her house and what she would like to do with him when they met. GirlinIL responded, "[I] mean we said we liked each other and im [sic] prety [sic] sure we probly [sic] said we wanted to [you] kno [sic] like have sex." Defendant also asked whether she

was taking birth control pills, stated that it "would be cool" if she were not, and asked whether she would stop taking them for the "right man."

Between January and March 2002, GirlinIL and defendant exchanged e-mails and had numerous instant message conversations. During this time, GirlinIL repeatedly indicated to defendant that she did not want her mother to catch her talking to him or meeting with him. In addition, she often referred to her school obligations and schedule. They discussed meeting at a local shopping mall, although GirlinIL stated that she could not meet on a school night. GirlinIL indicated that she could tell her mother that she was meeting friends at the mall and then have her mother drop her off and pick her up.

Defendant and GirlinIL eventually agreed to meet at the mall, near entrance J, on Saturday, February 23, 2002. Defendant asked her what she would like to do when they met, and GirlinIL replied that, if they liked each other, they could hang out and "mess around." Defendant asked if she was menstruating and taking birth control pills. GirlinIL responded that she was taking birth control pills but did not have her period at that time. Defendant then cancelled the February 23 meeting, stating that there was an emergency concerning his daughter.

After a series of e-mails, defendant and GirlinIL arranged another meeting at the same location at the mall on March 8, 2002. Defendant stated that he wanted to make "passionate love" to her and that they could go to a motel. Defendant also asked GirlinIL when she was scheduled to get her period and whether she took birth control pills during that time. He again referred to having a baby with her, telling her that he always wanted to "cum" inside of her, even if she were not taking birth control pills.

Defendant told GirlinIL to wear "something sexy" and that he would be wearing blue jeans, a black button-down shirt, a black leather jacket, and glasses. According to Pleasant's report, surveillance was set up at the mall on March 8. At 12:20 p.m., a man matching defendant's description entered the mall at entrance J. When asked his name, defendant replied, "Fred Arndt." Defendant was then placed under arrest and informed of his *Miranda* rights.

When questioned, defendant initially responded that he was at the mall to do some shopping. Then, he admitted that he was there to meet a girl named Loren, whom he had met online under the screen name "GirlinIL." Defendant stated that he had met GirlinIL in a chat room called "I Like Older Men" and that she was 18 years old. Since she had told him that she was 18, he assumed that she went to college. Defendant denied that GirlinIL had sent him a picture.

Defendant admitted that he and GirlinIL had talked about sex, but stated that he did not intend to have sex with her after their meeting. Instead, he planned to meet her, look at her driver's license to make sure that she was 18 years old, and then "go from there." According to defendant, it was "possible" that they would have had sex, if they liked each other. GirlinIL had indicated that sex "might happen," but defendant had not really thought about it. Defendant decided to go to the mall to do some shopping and see what she looked like.

Pleasant confronted defendant with the fact that he, posing as GirlinIL, had told defendant that Loren was age 15 or 16. Defendant replied that he thought she was lying about her age, since a lot of girls misrepresented themselves online. However, there was nothing specific in their communications that made him think that she was lying. Defendant stated that he was serious about having a baby with GirlinIL, but he would have had sex with her only if she were over 18.

According to defendant, he lied when he told GirlinIL that he had had sex with a 16-year-old girl whom he had met online. However, he admitted talking about sex online with other females under the age of 17. In particular, he had corresponded with a girl using the screen name "Ohiokid14," but defendant thought that she might have been lying about her age.

Pleasant showed defendant copies of the communications he had with GirlinIL, Kristin15IL, and Kaytea847, as well as copies of their profiles. Defendant admitted having instant message conversations with Kristin15IL and Kaytea847, but denied seeing their profiles. Defendant admitted reading the profile for GirlinIL, but he did not recall meeting her in the Places-Chicago chat room. Although he had exchanged e-mails and instant messages with her, he did not remember receiving the picture of her.

Police found in defendant's coat pocket a blue diamond-shaped pill that he claimed was cold medicine. Defendant subsequently admitted that it was Viagra, for which he had received a prescription the previous week.

Defendant asked Pleasant whether he could get an attorney and "just plead guilty." He then provided a written statement indicating the following. Although GirlinIL claimed to be 15, defendant believed that she was actually 18. At the mall, he thought that they would "just meet and talk." Defendant would have requested proof that she was 18, and if she were underage, he would have walked away. In the statement, defendant repeatedly indicated that they would not have had sex unless she were at least 18 years old. Police obtained from the mall a security videotape of defendant that was entered into evidence as stipulated exhibit No. 5.

Exhibit No. 2 contained stipulated documents from AOL, detailing the ownership and activity of defendant's account under the screen name ARhino6575. Defendant's AOL "buddy list" included the screen names "Ohiokid14," "tammyzxoxox," and "GirlinIL." The online profiles for Ohiokid14 and tammyzxoxox indicated that they were ages 14 and 15, respectively.

Exhibit No. 4 consisted of the stipulated testimony of Paul Swander, a police officer assigned to child sex cases with the Van West County sheriff's police in Ohio. Using the screen name Ohiokid14, whose online profile stated that she was a 14-year-old female, Swander had several Internet communications with defendant in November and December 2001. During the course of their communications, defendant asked Ohiokid14 if she would like to meet an older man and lose her virginity to an older man. Defendant also asked about her previous sexual experiences, whether she was taking birth control pills, whether she would like to have a baby with him, and whether she would keep the baby if she became pregnant. Defendant asked Ohiokid14 when she last menstruated, and then responded, "[C]ool then [you] might be ovulating when [I] get there to see [you]." Further, defendant told her that she would have three babies before she was 18 and that she would have to raise them until she was 18. Defendant also asked Ohiokid14 if she would like to spend the weekend with him and if she would like him to get her friends pregnant while she watched. Defendant wanted to know when they could meet and how Ohiokid14 could arrange a meeting since she lived with her grandmother. Ohiokid14 then provided defendant with her voice pager number and he left her a few messages.

In addition, Swander had Internet communications with defendant while using the screen name tammyzxoxox, whose online profile stated that she was a 15-year-old female. During an instant message conversation with tammyzxoxox in December 2001, defendant asked whether she liked older men, whether she was taking birth control pills, and what she liked to do with men. He also asked about her previous sexual experiences and described his own. Defendant stated that he had had sex with a 19-year-old girl but wanted to be with someone younger. He asked tammyzxoxox if any of her friends had become pregnant after having sex with an older man. In February and March 2002, defendant asked if she wanted to meet him at a shopping mall.

Defendant testified that he was 45 years old, divorced, and had two grown children. Although he had conversations in a chat room with GirlinIL, he did not initiate any of the conversations. According to defendant, he did not know the age of GirlinIL, but he com-

municated with her in a chat room that was for individuals over the age of 18. Based on the photograph, he could not tell her age, but he assumed that she was over 18.

Defendant admitted that GirlinIL stated that she was age 15 or 16. However, based on his experience on the Internet, he did not believe that either was her true age. Defendant had misrepresented his age on the Internet and other users had misrepresented their ages to him. Defendant presumed that GirlinIL was 18 or older and he did not believe that the photograph sent was actually of her. Defendant admitted having conversations with GirlinIL about having a baby, birth control pills, and her period. According to defendant, he had never taken Viagra prior to his arrest, but had one in his pocket because he was going to meet his girlfriend after going to the mall.

Defendant testified that GirlinIL invited him to meet her at the mall. On the first occasion, he did not go because he did not want to meet anyone. Defendant went to the mall the next time to go shopping, although he had no specific store in mind. Defendant agreed to meet GirlinIL at the ice rink and, after entering the mall, walked quickly to that location to look for her. If she appeared to be underage, he would have walked away.

The trial court found defendant guilty of both counts of indecent solicitation of a child. According to the court, defendant's conversations indicated a fixation with ages and attempts to lure underage girls into sexual relationships with him. The court considered defendant's conversations with girls other than GirlinIL as evidence of his plan, design, motive, intent, or lack of mistake.

Defendant filed a motion for a new trial, which the trial court denied. In sentencing defendant, the court found defendant's talk of impregnating underage girls particularly troubling. The trial court sentenced defendant to 30 months' probation with several conditions, including 12 months of periodic imprisonment, no contact with children under the age of 18, sex offender treatment, no Internet access except for employment purposes, and 200 hours of community service. Defendant's timely notice of appeal followed.

Defendant's first argument on appeal is that the State failed to prove him guilty beyond a reasonable doubt of indecent solicitation of a child. When reviewing a challenge to the sufficiency of the evidence, we consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). We note that this standard of review applies equally to bench trials. *People v. Patterson*, 314 Ill. App. 3d 962, 969 (2000). In applying this standard, our role is not to

retry the defendant. *Patterson*, 314 Ill. App. 3d at 969. Instead, the trier of fact determines the weight to be given to the testimony of the witnesses, the witnesses' credibility, and the reasonable inferences to be drawn from the evidence. *Patterson*, 314 Ill. App. 3d at 969.

■ A person commits the offense of indecent solicitation of a child "if the person, with the intent that the offense of *** aggravated criminal sexual abuse be committed, knowingly solicits a child or one whom he or she believes to be a child to perform an act of sexual penetration or sexual conduct as defined in Section 12—12 of this Code." 720 ILCS 5/11—6(a) (West 2002). " 'Solicit' means to command, authorize, urge, incite, request, or advise another to perform an act by any means including, but not limited to, in person, over the phone, in writing, by computer, or by advertisement of any kind." 720 ILCS 5/11—6(b) (West 2002). A "child" is "a person under 17 years of age." 720 ILCS 5/11—6(b) (West 2002).

■ Defendant first contends that the State failed to prove that he "knowingly solicited a child he believed to be under the age of 17." Specifically, defendant contends that all of his online conversations with Pleasant, posing as GirlinIL, took place in chat rooms designated for persons over the age of 18. According to defendant, communication in an "over-age-18" chat room negates the intent to solicit a minor. Because people role-play on the Internet and misrepresent their ages, defendant believed that he was communicating with an adult pretending to be under the age of 17. Defendant thus concludes that he did not travel to the mall to meet a child, but expected to meet an adult. We disagree.

The specific intent required to prove the elements of the offense of solicitation may be inferred from the surrounding circumstances and the acts of the defendant. *People v. Ruppenthal*, 331 Ill. App. 3d 916, 920 (2002). The trier of fact makes the factual determination regarding a defendant's intent, and we will not disturb that determination unless the evidence is so improbable that it raises a reasonable doubt about the defendant's guilt. *Patterson*, 314 Ill. App. 3d at 969.

The evidence supports the trial court's finding that defendant believed GirlinIL to be under the age of 17. The transcripts of their conversations make clear that GirlinIL informed defendant several times that she was only 15 or 16 years old. Additionally, her profile stated that she was only 15 years old. Defendant admitted that he read GirlinIL's profile and that she represented herself to be age 15 or 16. Further, GirlinIL's communication with defendant was consistent with that of an underage girl. Over the course of their conversations, she repeatedly told defendant that she did not want her mother or her tutor to catch her talking to him or meeting with him. She often

referred to her school obligations and schedule, did not want to meet on a "school night," and did not have a driver's license. In fact, defendant admitted that nothing specific in their communications made him think that she was lying about her age. Rather, he communicated that he would keep their relationship "secret" because of their ages, and that people would think that they were "father and daughter or relatives." Defendant also told GirlinIL that he had had sexual intercourse with a 16-year-old girl whom he had met online.

In addition, defendant's other Internet conversations with detectives posing as 14-year-old and 15-year-old females reveal an intent to solicit underage girls for sexual encounters. Defendant sent messages to Kaytea847, a 14-year-old female; Kristin15IL, a 15-year-old female; Ohiokid14, a 14-year-old female; and tammyzxoxox, a 15-year-old female. In particular, defendant told tammyzxoxox that he had had sexual intercourse with a 19-year-old girl but wanted to be with someone younger. As the trial court noted, all of these conversations indicate a fixation with ages and attempts to lure underage girls into sexual relationships with him. Thus, there was ample evidence to support the finding that defendant believed GirlinIL to be under the age of 17.

Defendant also argues that the State failed to show that he intended to engage in an act of sexual penetration with GirlinIL. Defendant asserts that there was no discussion of sexual activity related to his meeting with GirlinIL. Further, he asserts that proof of his intent to engage in sexual penetration with a child was lacking because he did not, in fact, meet a child, and because he said he would have walked away if GirlinIL appeared underage. We reject this argument.

There was sufficient evidence to show that defendant intended to engage in an act of sexual penetration with GirlinIL. Contrary to defendant's assertion, sexual matters were discussed in direct relation to their meeting. For example, defendant communicated that he wanted to make "passionate love" to GirlinIL and that they could go to a motel. He again referred to having a baby with her and stated that he always wanted to "cum" inside of her, even if she were not taking birth control pills. Further, with a Viagra tablet in his pocket, defendant arrived at the agreed-upon place, at the agreed-upon time, wearing the clothing that he had described. See *Patterson*, 314 Ill. App. 3d at 969-70 (defendant possessed specific intent to commit the offense of aggravated criminal sexual abuse by offering online to perform oral sex that day, arriving at the agreed-upon place, at the agreed-upon time, and wearing the clothing he had informed the minor he would be wearing). Accordingly, there was no requirement that

defendant actually meet a child, since defendant demonstrated his intent to commit the sexual acts discussed by traveling to the mall to meet GirlinIL. See *Ruppenthal*, 331 Ill. App. 3d at 920 (defendant's trip to Illinois for the admitted purpose of meeting a girl he knew to be "about 15" exhibited his intent to engage in the sexual activity discussed on the Internet).

Moreover, as stated earlier, defendant's online conversations with Kristin15IL, Ohiokid14, and tammyzxoxox were similar to his conversations with GirlinIL. Defendant asked these "underage girls" if they liked "older guys," if they used birth control, and about their sexual experiences. Additionally, he specifically expressed a desire to meet with Ohiokid14 and tammyzxoxox. Given this pattern of behavior, defendant's conversations with GirlinIL, and his trip to the mall to meet her, there was sufficient evidence to support his conviction of indecent solicitation of a child.

■ Defendant next contends that the State failed to prove beyond a reasonable doubt that he was not entrapped. According to defendant, his conduct was incited and induced by Pleasant, who entered an "adult-only" chat room and pretended to be an adult role-player. Defendant contends that his conversations with GirlinIL would have ended on September 21, 2001, if Pleasant had not initiated contact with him nearly five months later (on January 30, 2002). In defendant's view, Pleasant first brought up the subject of sex, initiated the contacts on February 13 and 26, and indicated a willingness to meet him after he cancelled the first meeting. For these reasons, defendant concludes that he was not predisposed to commit the offense.

The State counters that the defense of entrapment was not available to defendant because he did not admit the essential elements of the offense. Specifically, defendant denied any knowledge or belief that GirlinIL was under the age of 17, and he denied that he intended to commit an act of sexual penetration with her if she appeared underage at the mall. In the alternative, the State argues that, if defendant properly raised the defense of entrapment, he was predisposed to commit the offense.

Once an accused presents even slight evidence of entrapment, the State must prove the absence of entrapment beyond a reasonable doubt. *People v. White*, 249 Ill. App. 3d 57, 63 (1993). A defendant who raises entrapment as an affirmative defense necessarily admits to committing the crime, albeit because of improper governmental inducement. *People v. Rivas*, 302 Ill. App. 3d 421, 432 (1998). This is because it would be both factually and legally inconsistent for a defendant to deny committing the offense and then to assert as a defense that he committed the offense because of incitement or induce-

ment by authorities. *People v. Gillespie*, 136 Ill. 2d 496, 501 (1990). Thus, the entrapment defense is not available to a defendant who denies any of the facts constituting the offense charged, including the requisite mental state. *People v. Cooper*, 239 Ill. App. 3d 336, 349 (1992). Nevertheless, "this does not mean that a defendant who wishes to rely on the entrapment defense cannot plead not guilty and force the State to its proof on all the elements of the offense." *Cooper*, 239 Ill. App. 3d at 349. The question, as framed by the Appellate Court, Fifth District, is what constitutes a sufficient admission of commission of the offense to allow reliance upon the entrapment defense. *Cooper*, 239 Ill. App. 3d at 349-50.

In this case, defendant asserted during discovery an intention to raise the entrapment defense. In addition, defendant presented "slight evidence" of entrapment at trial by testifying that he did not initiate the Internet communications with GirlinIL and that she invited him to meet her at the mall. However, as the State points out, defense counsel appeared to abandon this defense by failing to argue entrapment in the opening statement, in the motion for a directed finding, or in the closing argument. As a result, the trial court did not make any express finding with respect to entrapment. More important, we agree with the State that defendant failed to admit essential elements of the offense by denying that he (1) knew or believed GirlinIL to be under the age of 17; and (2) intended to engage in sexual conduct with her. Based on the above, the defense of entrapment is unavailable to defendant. Nevertheless, even if, *arguendo*, defendant had properly raised the defense of entrapment, we would reject his argument.

In order to establish entrapment, the evidence must show (1) that the State improperly induced the defendant to commit the crime; and (2) a lack of predisposition to commit the crime on the part of the defendant. *People v. Watycha*, 272 Ill. App. 3d 774, 780 (1995). The entrapment defense is unavailable where the State has merely provided the defendant an opportunity to commit the crime. *Watycha*, 272 Ill. App. 3d at 780. For this reason, the defendant's predisposition is generally the critical inquiry, and the State must show that the defendant was ready and willing to commit the crime in the absence of any persuasion by the State. *Watycha*, 272 Ill. App. 3d at 780-81.

Defendant's assertions that Pleasant initiated contact, discussions of sex, and a meeting are not supported by the record. In September 2001, Pleasant, posing as GirlinIL, entered a chat room but did not engage in conversation. Later that day, defendant contacted GirlinIL and asked if she liked older men. Thus, the first contact was initiated by defendant. Further, defendant first raised the subject of sex during that conversation by asking GirlinIL about her previous sexual experi-

ences, whether she liked to be with older men sexually, and whether she was taking birth control pills. Defendant asked GirlinIL if she wanted him to "pull out" if they were together, and he suggested oral sex. In addition, he asked where she lived, and when and where they could meet. GirlinIL then signed off when defendant asked when she would be ready to have a baby with him.

Defendant's predisposition to commit the offense is further evidenced by his Internet communications with Kristin15IL, tammyzxoxox, and Ohiokid14. For instance, in November and December 2001, defendant had several conversations with Ohiokid14, represented to be age 14, in which he asked if she would like to lose her virginity to an older man. Defendant asked about her previous sexual experiences, whether she was taking birth control pills, and whether she would like to have a baby with him. Defendant also asked Ohiokid14 if she would like to spend the weekend with him, wanting to know when and how they could meet since she lived with her grandmother. Defendant engaged in similar conversations with Kristin15IL and tammyzxoxox, both represented to be age 15. In particular, defendant suggested meeting tammyzxoxox at a shopping mall. Based on this evidence, we conclude that defendant was ready and willing to commit the offense in the absence of any persuasion from the State. Consequently, the fact that Pleasant reinitiated contact with defendant in January and February 2002 merely provided defendant with the opportunity to commit the crime, and defendant was not entrapped.

■ Defendant next contends that there was a fatal variance between the indictment and the proof at trial. Both counts of the indictment alleged that defendant "committed the offense of indecent solicitation of a child, in that said defendant a person of 17 years of age and upwards, knowingly solicited a child he believed to be under the age of 17, to do an act of sexual penetration." Although defendant objected to the indictment at trial on the basis that there was no evidence that an actual child was involved in the offense, the trial court rejected this argument. Specifically, defendant contends that there is a variance between the charge that he "knowingly solicited a child he believed to be under the age of 17," and the proof that he was communicating with an adult. According to defendant, the indictment should have tracked the language of the statute, which provides that a person commits the offense of indecent solicitation of a child when he solicits a "child or one whom he or she believes to be a child." 720 ILCS 5/11—6(a) (West 2002). The State counters that no variance existed or, in the alternative, that any variance was not fatal.

We consider the plain and ordinary meaning of the language in the indictment as read and interpreted by a reasonable person. *People v.*

*Terry*, 342 Ill. App. 3d 863, 868 (2003). A charging instrument is to be read as a whole, and where a statute is cited in a count, the statute and count are to be read together. *People v. Hoffman*, 146 Ill. App. 3d 823, 833 (1986). To be fatal, a variance between the charging instrument and the proof at trial must be material and of such character that it misleads the accused in making his defense or exposes him to double jeopardy. *People v. Pergeson*, 347 Ill. App. 3d 991, 994 (2004).

We conclude that any variance between the indictment and the proof at trial was neither material nor prejudicial to defendant. The ordinary meaning of the language of the indictment, considered with the language in section 11—6, demonstrates that defendant was charged with soliciting "someone" he believed to be under the age of 17. In *Ruppenthal*, the court noted that the status of the person solicited is not an element of the crime of solicitation (*Ruppenthal*, 331 Ill. App. 3d at 920 n.2), because the culpable act defined by the statute is the defendant's belief that he was speaking to a minor. *Ruppenthal*, 331 Ill. App. 3d at 920. Accordingly, in reading the language in the count and the statute together, we determine that the indictment's reference to a "child he believed to be under the age of 17," rather than "one whom he believed to be a child," was not material.

In addition, any variance was not of such a character that it misled defendant in preparing his defense. Although defendant makes a general claim that he was prejudiced in preparing his defense, he does not explain how he was prejudiced, and we find no evidence to support his claim. At the time of his arrest, defendant was informed that his Internet communications had been with Pleasant, rather than an actual teenage girl. Further, during discovery, defendant was provided with Pleasant's reports, which detailed the communications between defendant and Pleasant, posing as various underage girls. Defense counsel's arguments before and during trial indicate that defendant was aware that the charges against him were based on his communications with an undercover officer rather than a child. Specifically, defendant's defense focused on whether he believed GirlinIL to be under the age of 17 and whether, when he arrived at the mall, he intended to commit an act of sexual penetration. Thus, we do not believe that the indictment misled defendant in preparing his defense; nor do we believe that he would have prepared his defense any differently had the indictment tracked the actual language of the statute.

Moreover, defendant is not exposed to the possibility of double jeopardy. The indictment set out the charged offense, as well as the time period during which the offense was alleged to have occurred. If any future prosecution were attempted, prior prosecution on the same

facts could be proved by resort to the record. See *People v. Ramos*, 316 Ill. App. 3d 18, 25 (2000).

In reaching this conclusion, we note that defendant's reliance on *People v. Durdin*, 312 Ill. App. 3d 4 (2000), is misplaced. In *Durdin*, the defendant was convicted of delivering cocaine within 1,000 feet of a school, although the parties stipulated that the controlled substance at issue was heroin. *Durdin*, 312 Ill. App. 3d at 7. The appellate court reversed the defendant's conviction, noting that the State had confessed error and that the defendant had been convicted of the wrong crime. *Durdin*, 312 Ill. App. 3d at 6, 8. Unlike *Durdin*, defendant here was not convicted of the wrong crime, and the State did not confess error. Additionally, the court in *Durdin* noted that, in *People v. Santiago*, 279 Ill. App. 3d 749 (1996), it had affirmed an armed robbery conviction even though the indictment and the proof at trial varied as to the victim's name. Despite the misidentification of the victim, the court in *Santiago* held that the variance in the information was not fatal to the conviction because the defendant did not sustain any prejudice, the mistake did not affect his defense, and double jeopardy prevented the defendant from being subjected to a second trial. *Santiago*, 279 Ill. App. 3d at 753. We reach the same result here; any variance in the indictment and the proof at trial does not warrant the reversal of defendant's convictions.

■ Defendant's final argument on appeal is that section 11—6 is facially overbroad because it reaches speech protected by the first amendment. According to defendant, the statute not only prohibits adults from soliciting children, but it also proscribes role-playing, which is lawful between consenting adults. Because "perfectly legal activity is swept into the activity proscribed" by the statute, defendant concludes that it results in an unnecessary chilling of the free-speech rights of adults.

Generally, a party does not have standing to assert the rights of others not before the court; however, the overbreadth doctrine is an exception to the general rule. *City of Harvard v. Gaut*, 277 Ill. App. 3d 1, 5 (1996). The potential chilling effect on the protected activities of others allows a defendant who is prosecuted for speech or expressive conduct to challenge a law on its face, even if his activities are not protected by the first amendment. *City of Harvard*, 277 Ill. App. 3d at 5-6.

A statute is presumed constitutional, and we must resolve any doubt in favor of the statute. *People v. Hill*, 333 Ill. App. 3d 783, 785 (2002). Our review is *de novo*. *Hill*, 333 Ill. App. 3d at 785. In determining whether a statute is overbroad, the overbreadth must be substantial before a statute regulating conduct will be invalidated on

its face. *People v. Smith*, 347 Ill. App. 3d 446, 449 (2004). A statute regulating conduct is overbroad if it: (1) criminalizes a substantial amount of protected behavior, relative to the law's plainly legitimate sweep; and (2) is not susceptible to a limiting construction that avoids constitutional problems. *Hill*, 333 Ill. App. 3d at 786. Our first task is to determine whether the statute reaches constitutionally protected conduct. *People v. Bailey*, 167 Ill. 2d 210, 226 (1995).

Our research reveals two Illinois cases that have addressed first amendment challenges to section 11—6. In *Ruppenthal*, 331 Ill. App. 3d at 920, the defendant communicated over the Internet with a detective posing as "Stacy," a 14-year-old girl, and then traveled to an airport to meet her in order to "rub her chest and vagina." The court considered whether the substance of the defendant's online conversation with Stacy was protected by the first amendment. In rejecting the defendant's claim, the court held that the element of criminal intent " 'transforms mere recitation of "loose" words which may mandate first amendment protection into the offense of solicitation.' " *Ruppenthal*, 331 Ill. App. 3d at 920, quoting *People v. Lewis*, 84 Ill. App. 3d 556, 561 (1980). Noting that it would be impossible for the act of solicitation to occur without the exchange of words between the offender and the victim, the court concluded that the defendant's discussions with "children or those he believe[d] to be children" regarding sexual activity did not rise to the level of constitutionally protected speech. *Ruppenthal*, 331 Ill. App. 3d at 920. In other words, " '[w]here speech is an integral part of unlawful conduct, it has no constitutional protection.' " *Bailey*, 167 Ill. 2d at 227, quoting *Chicago Real Estate Board v. City of Chicago*, 36 Ill. 2d 530, 552-53 (1967).

More recently, in *Smith*, 347 Ill. App. 3d 446, the Appellate Court, Third District, specifically held that section 11—6 is not unconstitutionally overbroad and thus does not infringe on the first amendment right to freedom of speech. There, the defendant communicated over the Internet with a detective he believed to a 15-year-old boy, and the two agreed to meet at a store for the purpose of engaging in oral sex. *Smith*, 347 Ill. App. 3d at 448. On appeal, the defendant did not challenge the statute as applied to him, but argued that a person age 17 or older would be engaging in constitutionally protected speech if he or she asked a 16-year-old spouse for an act of sexual penetration, yet that person could be prosecuted for indecent solicitation of a child because there is no exception for married people. *Smith*, 347 Ill. App. 3d at 449. The court rejected the defendant's claim, holding that the legitimate goal of the statute far surpassed any potential unlawful applications. *Smith*, 347 Ill. App. 3d at 450. Recognizing that the prevention of sexual exploitation and abuse of children constitutes a govern-

ment objective of surpassing importance, the court concluded that the occasions upon which the State would seek to enforce the statute with regard to the hypothetical presented by the defendant would be exceedingly rare. *Smith*, 347 Ill. App. 3d at 450. Further, the court reasoned that courts could consider the constitutionality of the statute as applied to a married couple on a case-by-case basis and that any flaw in section 11—6 of the Code was not of substantial concern when viewed in the context of the statute as a whole. *Smith*, 347 Ill. App. 3d at 450.

Here, defendant relies on *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 152 L. Ed. 2d 403, 122 S. Ct. 1389 (2002), to support his argument that section 11—6 is overbroad. According to defendant, section 11—6 unnecessarily bars speech (in the form of role-playing) between consenting adults that is protected by the first amendment. Defendant contends that he was "within his rights under the first amendment to engage in speech with another adult, including an adult person who may parade as a child in an adult chat room." Additionally, he asserts that the link between adult chat room conversations concerning adult-child sexual activity and actual solicitation of a child is "contingent and indirect." Defendant argues that section 11—6 goes well beyond prohibiting illegal conduct, by restricting the speech available to law-abiding adults. We disagree.

In *Ashcroft*, the Court declared unconstitutionally overbroad two provisions of the Child Pornography Prevention Act of 1996 (CPPA) (18 U.S.C. § 2251 *et seq.* (2000)), which extended the federal prohibition against child pornography to sexually explicit images that appeared to depict minors but were produced without using real children. *Ashcroft*, 535 U.S. at 239-40, 152 L. Ed. 2d at 414, 122 S. Ct. at 1396. The statute prohibited, in specific circumstances, possessing or distributing these images, sometimes called "virtual child pornography," which may be created by using adults who look like minors, or by using computer imaging. *Ashcroft*, 535 U.S. at 239-41, 152 L. Ed. 2d at 414-15, 122 S. Ct. at 1396-97. In contrast to *New York v. Ferber*, 458 U.S. 747, 73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982), which upheld a prohibition on the distribution, sale, and production of child pornography because those acts were "intrinsically related" to the sexual abuse of children, the *Ashcroft* Court determined that the CPPA prohibited speech that recorded no crime and created no victims. *Ashcroft*, 535 U.S. at 249-50, 152 L. Ed. 2d at 420-21, 122 S. Ct. at 1401-02. Thus, virtual child pornography was not "intrinsically related" to the sexual abuse of children, and the harm did not necessarily follow from the speech, but depended upon some "unquantified potential for subsequent criminal acts." *Ashcroft*, 535 U.S. at 250, 152 L. Ed. 2d at 421, 122 S. Ct. at 1402.

Contrary to defendant's assertion, *Ashcroft* is inapposite to the case at bar. *Ashcroft* did not involve a challenge to a statute that prohibited speech used to lure a minor to engage in sexual acts. In fact, the *Ashcroft* Court specifically noted that the case involved "no attempt, incitement, solicitation, or conspiracy." *Ashcroft*, 535 U.S. at 253, 152 L. Ed. 2d at 423, 122 S. Ct. at 1403. There, the government argued that the CPPA was necessary because pedophiles may use virtual child pornography to seduce children. The Court rejected that argument, explicitly stating that, although the government "may enforce criminal penalties for unlawful solicitation," the "evil in question depends upon the actor's unlawful conduct, conduct defined as criminal quite apart from any link to the speech in question." *Ashcroft*, 535 U.S. at 252, 152 L. Ed. 2d at 422, 122 S. Ct. at 1402-03. The Court also rejected the argument that virtual child pornography whets the appetites of pedophiles and encourages them to engage in illegal conduct, since the case involved no solicitation and the government had shown no more than a remote connection between the speech and any resulting child abuse. *Ashcroft*, 535 U.S. at 253, 152 L. Ed. 2d at 422-23, 122 S. Ct. at 1403.

Recognizing the vital distinction between words and deeds, the *Ashcroft* Court clearly stated that the government may suppress speech that " 'is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.' " *Ashcroft*, 535 U.S. at 253, 152 L. Ed. 2d at 423, 122 S. Ct. at 1403, quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447, 23 L. Ed. 2d 430, 434, 89 S. Ct. 1827, 1829 (1969). Section 11—6 clearly prohibits speech that solicits minors to engage in sexual activity with adults. According to the statute, a person commits the offense of indecent solicitation of a child if the person knowingly solicits a child, or one whom he or she believes to be a child, to perform an act of sexual penetration or conduct (720 ILCS 5/11—6(a) (West 2002)). Consequently, we disagree that *Ashcroft* mandates the result urged by defendant.

Defendant asserts that few adults will risk "role-playing" on the Internet due to the "uncertain reach" of the statute. However, the statute applies only to those who "knowingly" target minors for the purpose of illegal conduct. Moreover, we note that defendant was not convicted based upon the contents of his conversations with GirlinIL. As the court in *Ruppenthal* noted, "hundreds of similarly inappropriate exchanges undoubtedly take place every day on the Internet. Those discussions, although disturbing, are not illegal if not acted upon." *Ruppenthal*, 331 Ill. App. 3d at 921. Defendant here demonstrated his intent to commit illegal sexual acts by traveling to the mall to meet GirlinIL.

Defendant further contends that setting up a meeting, as well as the meeting itself, constitutes legal activity among adults in the "adult role-playing environ." We reject this argument on the basis that neither role-playing between adults nor meetings between adults are prohibited by the statute. As we have stated, a person cannot be prosecuted under the statute unless he or she actually believes that he or she is soliciting a minor, as was the case here. See *Ruppenthal*, 331 Ill. App. 3d at 920 (the element of criminal intent transforms speech that may be protected by the first amendment into the offense of solicitation). Rather than prohibiting speech about sex in general, or even communications concerning sex between adults and minors, the statute prohibits only speech that solicits a child, or one believed to be a child, to engage in illegal sexual activity with an adult.

While defendant is correct that the statute applies to speech between an adult and a law enforcement officer who poses as a minor, the statute requires that the accused "believe" that the person solicited be under 17 years of age. Accordingly, the fact that defendant's words were transmitted to an adult does not negate his belief that he was speaking to a minor, which is part of the culpable act defined by the statute. See *Ruppenthal*, 331 Ill. App. 3d at 920. Moreover, we note that other states considering comparable luring statutes have reached the same conclusion. For instance, in *State v. Backlund*, 672 N.W.2d 431, 438-42 (N.D. 2003), the court rejected the defendant's claim that the North Dakota luring statute was unconstitutionally overbroad under *Ashcroft* because his communications were to a "virtual minor," or a police officer posing as a minor. Citing *Ruppenthal*, the court stated that "[m]erely because [his] communications were transmitted to an adult does not negate his belief he was communicating with a minor, which is an aspect of the culpability defined by the statute." *Backlund*, 672 N.W.2d at 442. Likewise, in *State v. Snyder*, 155 Ohio App. 3d 453, 466, 801 N.E.2d 876, 886 (2003), the court rejected the defendant's argument that the Ohio luring statute had a "chilling effect" on speech because it applied to speech between an adult and a law enforcement officer posing as a minor. The *Snyder* court concluded that the statute was not overbroad and did not infringe on first amendment rights because the offender would have to believe that he is soliciting a minor for sexual activity, a criminal act, before his conduct would fall under the statute. *Snyder*, 155 Ohio App. 3d at 466, 801 N.E.2d at 886. Finally, in *People v. Hsu*, 82 Cal. App. 4th 976, 989, 99 Cal. Rptr. 2d 184, 194 (2000), the court noted that the only chilling effect of the California luring statute is on the conduct of those who would use otherwise protected speech to seduce minors. For all of these reasons, defendant's first amendment challenge to section 11—6 must fail.

524

For the aforementioned reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

O'MALLEY, P.J., and KAPALA, J., concur.